**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Case No. 10-cv-24513-JLK**

JUANA CURRY and WILLIAM MOORE,
individually and on behalf of a class of
similarly situated individuals,

      Plaintiffs,

           v.

AVMED, INC., d/b/a/ AvMed, a Florida
Corporation,

      Defendant.

[Hon. James Lawrence King]

**PLAINTIFFS' *UNOPPOSED* MOTION AND MEMORANDUM IN SUPPORT OF**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Jay Edelson (*Pro Hac Vice*)
Ari J. Scharg (*Pro Hac Vice*)
Benjamin S. Thomassen (*Pro Hac Vice*)
Edelson LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel.: (312) 589-6370
Fax: (312) 589-6378
jedelson@edeslon.com
ascharg@edelson.com
bthomassen@edelson.com

Edmund A. Normand
Florida Bar No. 865590
Diego M. Madrigal, III
Florida Bar No. 0037643
Wooten, Kimbrough, & Normand, P.A.
236 S. Lucerne Circle
Orlando, Florida 32801
Tel.: (407) 843-7060
Fax: (407) 843-5836

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iv

I.    INTRODUCTION ........................................................................................1

II.   SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT...................2

      A.    Plaintiffs' Allegations and the Litigation History...................................2

      B.    The Parties' Negotiations and Settlement Efforts..................................4

III.  SUMMARY OF THE PROPOSED SETTLEMENT .......................................5

      A.    Class Definitions..............................................................................5

      B.    Monetary Relief...............................................................................5

            1.    *Approved Premium Overpayment Claims* ...................................6

            2.    *Approved Identity Theft Claims* ...............................................6

      C.    Prospective Relief............................................................................6

      D.    Additional Relief..............................................................................7

            1.    *Payment of Notice and Administrative Fees* ..............................7

            2.    *Incentive Award for Class Representatives* ...............................7

            3.    *Payment of Attorneys' Fees* ..................................................7

      E.    Release of Liability...........................................................................7

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED..................7

      A.    The Requirement of Numerosity is Satisfied.........................................8

      B.    The Requirement of Commonality is Satisfied.......................................9

      C.    The Typicality Requirement is Satisfied ..............................................10

      D.    The Adequacy of Representation Requirement is Satisfied ......................11

      E.    The Proposed Settlement Classes Meet the Requirements of
            Rule 23(b)(3) ................................................................................12

        1.      *Common Questions of Law and Fact Predominate* ................................ 12

        2.      *A Class Action is the Superior Method for Adjudicating this Controversy* ................................ 13

V.     **PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** ...... 14

VI.     **THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL** ................................ 15

VII.     **THE NOTICES SHOULD BE APPROVED IN FORM AND SUBSTANCE** ............ 18

VIII.     **CONCLUSION** ................................ 19

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................7, 8, 12 13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................................18

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................12

**United States Circuit Court of Appeals Cases:**

*Cooper v. Southern Co.*, 390 F.3d 695 (11th Cir. 2004)..........................................................10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................................13

*Hines v. Widnall*, 334 F.3d 1253 (11th Cir. 2003)..................................................................10

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992)......................................................15

*Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983) ................................................................10

*Kilgo v. Bowman Transp. Inc.*, 789 F.2d 711 (11th Cir. 1984) ..................................................8

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987) .........................................11

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984) ...............................10

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012)........................................................3-4

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) ......................................................................................12

*Sikes v. Teleline, Inc.*, 281 F.3d 1350 (11th Cir. 2002) ...........................................................13

**United States District Court Cases:**

*Access Now, Inc. v. Claires Stores, Inc.*,
    No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002).....................................15

*Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004)......................................9, 12, 13

*Beringer v. Certegy Check Services, Inc.*, No. 07-cv-01657 (M.D. Fla. Sept. 3, 2008).......... 17-18

*Fabricant v. Sears Roebuck*, 202 F.R.D. 306 (S.D. Fla. 2001) ...........................................8, 9, 11

*Fresco v. Auto Data Direct, Inc.*,
No. 03-61063-CIV, 2007 WL 2330895 (S.D. Fla. May 14, 2007)............................15, 16

*Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013)......................14

*In re Checking Account Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012).................9, 11, 12, 13

*In re Checking Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011)................................................9

*In re Domestic Air Transport.*, 148 F.R.D. 297 (N.D. Ga. 1993)..................................................15

*In re Facebook Privacy Litig.*, No. 10-cv-02389-JW (N.D. Cal. Dec. 10, 2010).........................14

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
MDL No. 09-2046 (S.D. Tex. 2012) .................................................................................18

*In re Terazosin Hydrochloride*, 220 F.R.D. 672 (S.D. Fla. 2004)...................................................13

*Johansson-Dohrmann v. Cbr Sys., Inc.,* No. 12-CV-1115 (S.D. Cal. July 24, 2013) .................17

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997) .........................................................8

*Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...........................................17

*Rowe v. Unicare Life and Health Ins. Co.,* No. 09-cv-02286 (N.D. Ill. Sept. 14, 2011)..............18

*Smith v. Wm. Wrigley Jr. Co.,* No. 09–60646, 2010 WL 2401149 (S.D. Fla. Jun. 15, 2010) .......15

*Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996) ........................................................8

*Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1998)...............................................15, 16

**Federal Rules and Statutory Provisions:**

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

Health Insurance Portability and Accountability Act ("HIPPA"),
45 C.F.R. § 164.302, *et seq.*.....................................................................................3, 9, 10

**Miscellaneous Authorities:**

ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25 (4th Ed. 2002)...............................15, 18

MANUAL FOR COMPLEX LITIG. (3rd Ed. 1995) §30.41 ...........................................................15, 17

MANUAL FOR  COMPLEX LITIG. (4th ed. 2004) § 21.632...............................................................7

## I.      INTRODUCTION

Plaintiffs Juana Curry's and William Moore's claims in this class action lawsuit arise from a data breach at the corporate headquarters of Defendant AvMed, Inc. ("Defendant" or "AvMed"), a Florida-based health insurance provider.  Plaintiffs allege that in December 2009, two laptop computers containing the unencrypted (i.e., easily accessible and readable) private information of Defendant's 1.2 million customers—including their names, addresses, Social Security numbers, and medical health information—were stolen from a conference room. Plaintiffs allege that as a result of Defendant's failure to properly secure their information, they suffered damages from having their identities stolen and by overpaying for insurance coverage (the price of which, they allege, included the costs associated with protecting their information).

After nearly three years of hard-fought litigation, which included an appeal before the Eleventh Circuit on an issue of first impression, multiple private mediation sessions, and extensive arm's-length negotiations, the Parties have reached a proposed settlement that, if approved, will finally resolve the claims asserted against Defendant in this matter and provide monetary benefits that go well beyond the credit monitoring enrollment offer that is normally achieved through data breach class action settlements.  (The Parties' Settlement Agreement is attached hereto as Exhibit 1.)

Under the terms of the Settlement, Defendant has agreed to create a Settlement Fund[1] in the amount of $3,000,000, from which members of the Premium Overpayment Settlement Class (i.e., customers that have paid Defendant for insurance) can make claims for $10.00 for each year that they made such payments (subject to a cap of $30.00), and members of the Identity Theft Settlement Class (i.e., those that have suffered identity theft caused by the 2009 data breach) can make claims to recover their losses.  As discussed herein, the cash payments available to Premium Overpayment Settlement Class members provide reimbursement for the portion of their insurance premiums that Defendant should have allocated to data protection and

---

[1]      Unless otherwise stated, capitalized terms shall have the same meaning as set forth in the Settlement Agreement.

security—a benefit that has never before been achieved through a data breach settlement.

Additionally, under the Settlement, Defendant has implemented or, will have implemented by the Final Approval Hearing, wide-ranging prospective measures to ensure that its customers' Sensitive Personal Information is protected, including by (1) instituting mandatory security awareness and training programs for all company employees, (2) instituting mandatory training on appropriate laptop use and security for all company employees whose employment responsibilities include accessing information stored on company laptop computers, (3) upgrading all company laptop computers with additional security mechanisms, including GPS tracking technology, (4) adopting new password protocols and full disk encryption technology on all company desktops and laptops, and (5) installing physical security upgrades at company facilities and offices to further safeguard workstations from theft.

All told, the Settlement is a tremendous achievement for the Plaintiffs and proposed Settlement Classes, and provides landmark relief that will serve as a model for other companies who face similar lawsuits.  Thus, Plaintiffs ask that the Court grant their unopposed motion for preliminary approval in its entirety.

## II.      SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

### A.      Plaintiffs' Allegations and the Litigation History.

Defendant AvMed is a healthcare plan provider that offers a variety of healthcare plans to both businesses and individuals throughout the State of Florida.  (*See* Second Amended Complaint ["Compl."], Dkt. 31 at ¶ 9.)  The data breach at the center of this case occurred on December 10, 2009, when two laptop computers containing approximately 1.2 million AvMed members' names, addresses, telephone numbers, Social Security numbers, medical diagnosis information, and other private health information, were stolen from Defendant's corporate office. (*Id.* ¶ 2.)  Later investigations revealed that Defendant failed to encrypt the information contained on the stolen computers.  (*Id.* ¶ 35.)

On November 16, 2010, Plaintiffs Jean Resnick, Miguel Vasquez, Christopher Atkinson, Rochel Albertson, and Kirsten Atkinson filed a putative class action in the Circuit

Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Civil Division, captioned *Resnick, et. al v. AvMed, Inc, d/b/a AvMed*, Case No. 10-60022-CA-08.  In their complaint, plaintiffs alleged claims for damages and injunctive relief against Defendant for failing to properly safeguard their personal health information in accordance with the Health Insurance Portability and Accountability Act, 45 C.F.R. § 164.302, *et seq.* ("HIPAA").

On January 14, 2011—following Defendant's removal of the action to this Court—plaintiffs filed their First Amended Complaint. (Dkt. No. 15.)  In their amended pleadings, plaintiffs provided additional detail with respect to Defendant's insufficient security efforts and the resultant mass exposure of their Sensitive Personal Information, as well as specific allegations concerning Plaintiff Curry, who suffered actual identity theft and had accounts opened in her name, purchases made with her credit card, and her addresses changed with the Postal Service.  (*Id.* ¶ 46-54.)  Plaintiffs also added a count for unjust enrichment, alleging that they paid monthly premiums to Defendant, that Defendant was supposed to allocate a portion of those premiums to its promised data security efforts, that Defendant did not implement those efforts but retained the entirety of plaintiffs' premiums in any event, and as a result, plaintiffs overpaid for promised but unimplemented services and were entitled to partial refunds.  (*Id.* ¶ 109-114.)

Soon after, Defendant filed a motion to dismiss, which the Court granted after finding that plaintiffs' allegations of harm were too speculative.  (Dkt. 30.)  On April 25, 2011, Plaintiffs filed their Second Amended Complaint (the "Complaint"), which dropped all Plaintiffs but Curry, added Plaintiff Moore as a party-plaintiff, and provided additional factual allegations linking their instances of identity theft to the December 2009 data breach.  (Compl. ¶ 67-74.)  Notwithstanding, on July 12, 2011, the Court found that the pleadings still failed to allege a cognizable injury, and dismissed the Complaint with prejudice.  (Dkt. 39.)

Plaintiffs appealed the dismissal to the Eleventh Circuit and, after full briefing and oral argument, the Eleventh Circuit reversed in part and affirmed in part.  Acknowledging that the appeal presented an issue of first impression in this Circuit, the court first found that Plaintiffs'

allegations conferred Article III standing.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327-28 (11th Cir. 2012).  The Eleventh Circuit also found that Plaintiffs had established a plausible causal connection between the December 2009 data breach and their instances of identity theft and, thus, the alleged injuries were not prohibitively speculative.  *Id.*  As for Plaintiffs' unjust enrichment theory, the Eleventh Circuit recognized that Plaintiffs allegations—that part of the insurance premiums Plaintiffs paid to Defendant were supposed to fund the administrative costs of data security, and that Defendant's subsequent failure to implement that security barred it from equitably retaining the full amounts received—were sufficient to state a claim.  *Id.* at 1328.

The Eleventh Circuit remanded the case on October 9, 2012, and shortly thereafter, on October 26, 2012, AvMed answered the Second Amended Complaint and filed a Motion to Strike Class Allegations.  (Dkts. 51, 52.)  Plaintiffs responded and, before AvMed filed its reply, the Court denied Defendant's motion as premature.  (Dkts. 57, 58.)  A few weeks later, the Parties conducted their Rule 26(f) conference.  Plaintiffs then propounded their First Sets of Interrogatories and Requests for the Production of Documents, and the Parties began to exchange documents and information.

### B.    The Parties' Negotiations and Settlement Efforts.

Beginning in December 2012, the Parties engaged in discussions to explore the potential for settlement, and decided to give mediation a chance.  (*See* Declaration of Ari J. Scharg ¶ 4, ("Scharg Decl.") attached as Exhibit 2.)  They selected Rodney A. Max of the Upchurch Watson White & Max Mediation Group to serve as mediator (*id.*), and jointly moved to stay the case. (Dkts. 72-73.)

On January 18, 2013, the Parties met for a formal, in-person mediation with Mr. Max in Miami, Florida.  (Scharg Decl. ¶ 5.)  Over the course of a full day of negotiations, the Parties engaged in productive discussions and, though unable to agree to the principal terms of a settlement at that time, agreed to continue speaking.  (*Id.*)  Over the next six months, the Parties, with the assistance of Mr. Max, engaged in several additional rounds of arm's-length negotiations.  (*Id.* ¶ 6.)  Eventually, the Parties made enough progress that Mr. Max suggested

that they sit down for a second in-person mediation to work through certain remaining issues. (*Id*.)  As such, the Parties met again with Mr. Max in Miami, Florida on April 11, 2013.  (*Id*. ¶ 7.)  This time, the Parties made substantial progress towards settlement and agreed to work through the remaining issues that stood in the way of a complete resolution.  (*Id*.)

Finally, on May 19, 2013, after several additional rounds of arm's-length negotiations presided over by Mr. Max, the Parties reached an agreement on the principal terms of a settlement, which they memorialized in a Memorandum of Understanding.  (*Id*. ¶ 8.)  Over the next four months, the Parties exchanged several drafts of the agreement and related documents, until they were finalized.  The Parties now seek preliminary approval of the Settlement.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

The terms of the settlement are set forth in the Settlement Agreement (*see* Ex. 1) and are briefly summarized as follows:

**A.   Class Definitions.**  The Settlement Agreement provides for two Settlement Classes, defined as follows:

> **The Premium Overpayment Settlement Class:** All current and former AvMed customers who, prior to December 2009, paid AvMed for insurance, and whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident.

> **The Identity Theft Settlement Class:**  All current and former AvMed customers whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident, and who suffered Identity Theft and incurred unreimbursed losses as a result.

Excluded from the Settlement Classes are: (a) Defendant; (b) any current or former employee, officer, or agent of Defendant; (c) the Settlement Administrator, and its respective parents, subsidiaries, successors, predecessors, and related entities; and (d) any trial judge(s) presiding over this Action, and the immediate family members of any such trial judge(s).  (Agreement ¶¶ 1.18, 1.33.)

**B.   Monetary Relief.**  Defendant has agreed to establish a Settlement Fund in the amount of $3,000,000, to pay for (i) Approved Premium Overpayment Claims, (ii) Approved Identity Theft Claims, (iii) Settlement Administration Expenses, (iv) Class Counsel's attorneys'

fees and expenses, and (v) Plaintiffs' Incentive Awards.

      **1.**     ***Approved Premium Overpayment Claims.***

      Under the Settlement, Premium Overpayment Settlement Class members who submit valid claim forms are eligible to receive up to $10.00, or a lesser *pro rata* share, for each year they paid Defendant for insurance prior to the December 2009 data breach, subject to a maximum recovery of $30.00.  As explained below, this relief effectively reimburses Class members for the portion of premiums that Plaintiffs contend Defendant should have spent (but didn't spend) on adequate data protection.  To be eligible for a payment, members of the Premium Overpayment Settlement Class must submit a Premium Overpayment Claim Form (*see* Ex. 1-A), signed under penalty of perjury, which states that they purchased insurance from Defendant prior to December 2009, identifies the number of years that they paid for such insurance, and indicates that they had the expectation that Defendant would protect their personal information.  (Agreement ¶¶ 1.33, 1.45, 2.1(a).)

      **2.**     ***Approved Identity Theft Claims.***

      The Settlement also provides payments to Identity Theft Settlement Class members for the amount of any unreimbursed monetary losses that occurred as a result of the December 2009 data breach, or a lesser *pro rata* share.  To be eligible for a reimbursement, members of the Identity Theft Settlement Class must submit an Identity Theft Claim Form (*see* Ex. 1-B), signed under penalty of perjury, which identifies all such losses and provides supporting documentation. (Agreement ¶¶ 1.45, 1.18, 2.1(b).)

      **C.**     **Prospective Relief.**  In addition to the monetary relief above, Defendant will implement (or has already implemented) the following prospective relief: (1) mandatory security awareness and training programs for all company employees, (2) mandatory training on appropriate laptop use and security for all company employees whose employment responsibilities include accessing information stored on company laptop computers, (3) upgrading of all company laptop computers with additional security mechanisms, including GPS tracking technology, (4) new password protocols and full disk encryption technology on all

company desktops and laptops so that electronic data stored on such devices would be encrypted at rest, (5) physical security upgrades at company facilities and offices to further safeguard workstations from theft, and (6) the review and revision of written policies and procedures to enhance information security.

      **D.**    **Additional Relief.**  In addition to the monetary and prospective relief described above, Defendant has also agreed to provide the following:

      **1.**    *Payment of Notice and Administrative Fees***:**  Defendant will pay for the cost of sending notice to the Settlement Classes and any other notice as required by the Court, as well as all costs of administration of the settlement.  All notice and administrative costs shall be deducted from the $3,000,000 Settlement Fund.  (Agreement ¶ 1.40.)

      **2.**    *Incentive Award for Class Representatives***:**  In addition to any award available to them under the Settlement, and in recognition of their efforts on behalf of the Classes, the Class Representatives in this matter shall, subject to Court approval, receive an award of $10,000 to be split evenly amongst themselves as compensation for their time and effort serving as the Class Representatives in this action.  (Agreement ¶ 8.3.)

      **3.**    *Payment of Attorneys' Fees***:**  Subject to Court approval, Defendant has agreed to pay Class Counsel $750,000 for attorneys' fees and costs expended in this Action. Defendant agrees that this amount is fair and reasonable and will not object to or otherwise challenge Class Counsel's application for this amount.  (Agreement ¶¶ 8.1-8.2.)

      **E.**    **Release of Liability.**  In exchange for the relief described above, Defendant and each of its related and affiliated entities, will receive a full release of all claims related to the allegedly insufficient maintenance and protection of the Settlement Classes' Sensitive Personal Information that caused the December 2009 data breach.  (Agreement ¶¶ 1.37-1.39, 3.1-3.2.)

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

      In order to grant preliminary approval of a proposed settlement, the Court should determine that the proposed settlement class is appropriate for certification.  *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th Ed. 2004)); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620

(1997).  Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  Fed. R. Civ. P 23(a)(1)-(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001).  Additionally, because Plaintiffs seek certification under Rule 23(b)(3), Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims.  Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.  District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate.  *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).  Here, Plaintiffs meet all of the Rule 23(a) and 23(b)(3) prerequisites and certification is proper.

### A.     The Requirement of Numerosity is Satisfied

The first prerequisite of class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1); *see also Fabricant*, 202 F.R.D. at 313 (requiring that joinder be impracticable, not impossible).  To satisfy this requirement, there is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable."  *Id.*  However, a plaintiff must "proffer some evidence of the number of members in the purported class, or at least a reasonable estimate of that number."  *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, the laptops stolen during the 2009 data breach contained the Sensitive Personal Information of 1.2 million AvMed customers.  The Premium Overpayment Settlement Class is comprised of the approximately 460,000 individuals whose personal information was contained on the stolen laptops and who paid AvMed for insurance.  Moreover, the Identity Theft Settlement Class is comprised of those individuals whose personal information was contained on the stolen laptops and who suffered identity theft.  In light of the fact that both Curry and Moore have suffered actual identity theft, and that Class Counsel has been contacted by dozens of individuals to report fraudulent activity on their credit and bank statements, Class Counsel estimates that there are approximately 100 members in the Identity Theft Settlement Class.

(Scharg Decl. ¶ 9); *see Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where class was comprised of 31 members).  Accordingly, the proposed Classes are so numerous that joinder is impracticable.  The numerosity requirement is thus satisfied.

**B.      The Requirement of Commonality is Satisfied**

The second requirement for certification mandates that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied when there is "at least one issue affecting all or a significant number of proposed class members."  *Fabricant*, 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004).  The threshold for demonstrating the commonality requirement is not high, *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 652 (S.D. Fla. 2012), and is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members."  *In re Checking Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011).

Here, nearly every question of law or fact stems directly from Defendant's alleged failure to protect its customers' Sensitive Personal Information, and each is necessarily common because (1) Defendant protected, or failed to protect, the Classes' personal information in the exact same way, and (2) this lawsuit arises out of a single event: the December 2009 data breach. As such, Defendant's conduct gives rise to questions of law and fact that are common to both Settlement Classes—especially questions regarding Defendant's compliance with HIPAA, such as: (i) whether Defendant failed to ensure the confidentiality and integrity of electronic protected health information it created, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1), (ii) whether Defendant implemented technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1), (iii) whether Defendant failed to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2), (iv) whether Defendant failed to protect against reasonably anticipated uses or disclosures of electronic protected health information that

are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3), and (v) whether Defendant failed to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 CFR164.530(c). Further, additional common questions of fact and law exist with respect to the Premium Overpayment Settlement Class, such as whether Defendant unjustly retained a portion of their insurance premiums, and if so, the amount of their insurance premiums that should have been used for data protection and security.  Regardless of the answers to any of the above questions, there can be no dispute that the questions are common to each and every member of the Settlement Classes.

There are multiple questions of law and fact common to members of both Classes, and thus, the commonality requirement is satisfied.

### C.    The Typicality Requirement is Satisfied

The next requirement, typicality, requires that class representatives have claims that are typical of those of the putative class members.  Fed. R. Civ. P. 23(a)(3).  "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large."  *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003).  A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.,* 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").  Simply put, when the same unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met.  *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

In this case, the claims of Plaintiffs Curry and Moore, and each member of both Classes, center on Defendant's alleged failure to adequately safeguard their Sensitive Personal

Information, and moreover, arise from the exact same event: the 2009 data breach. Plaintiffs and members of the Premium Overpayment Settlement Class all seek the return of monies paid for data security that AvMed allegedly did not implement. Likewise, Plaintiffs and members of the Identity Theft Settlement Class all allege that their personal data was compromised in the 2009 Incident, which lead to instances of identity theft and losses they now seek to recover. Accordingly, by pursuing their own claims through this matter, Plaintiffs Curry and Moore will necessarily advance the interests of the Settlement Classes. The typicality requirement is therefore satisfied.

### D.     The Adequacy of Representation Requirement is Satisfied

Finally, Rule 23(a) requires the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates both that: (1) the class representative possess no interests antagonistic to the settlement class, and (2) that both the class representative and proposed Class Counsel will prosecute the Action vigorously on behalf of the Class. *Fabricant*, 202 F.R.D. at 314-15 (citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987). Stated differently, "[a]dequacy exists where the named plaintiffs share common interests with the class members and seek the same type of relief for themselves as they seek for the class." *In re Checking*, 286 F.R.D. at 654.

First, Plaintiffs Curry's and Moore's interests are both typical of and aligned with those of the proposed Classes. Both Plaintiffs seek recovery for both premium overpayments and unreimbursed losses related to instances of identity theft caused by the 2009 Incident. Moreover, each has remained involved in this case throughout its entire pendency, and each remains committed to see that the interests of both Classes are protected and advanced. (Scharg Decl. ¶ 10.) As such, both Curry and Moore have no interests antagonistic to those of the Classes, and both have and will continue to fairly and adequately protect the Classes' interests.

Likewise, proposed Class Counsel and the lawyers at Edelson LLC will adequately represent the Settlement Classes, as they regularly engage in major complex litigation involving consumer technology issues, have the resources necessary to conduct litigation of this nature,

and have frequently been appointed lead class counsel by courts throughout the country.  (Scharg Decl . ¶ 11; *see also* Firm Resume of Edelson LLC, attached as Exhibit A.)  Moreover, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this Action, and will continue to do so throughout its pendency.  (*Id.* at ¶ 13.)

As such, Plaintiffs and their counsel have and will continue to adequately represent the Settlement Classes, and the final Rule 23(a) requirement is satisfied.

### E.    The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class.  *In re Checking*, 286 F.R.D. at 650.  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (ii) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3).  The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis."  *Agan*, 222 F.R.D. at 700.  As explained below, the proposed Settlement Classes meet these requirements.

#### 1.    *Common Questions of Law and Fact Predominate*

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541*, 2551-57 (2011), and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623.  Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *In re Checking*, 286 F.R.D. at 655 (S.D. Fla. 2012); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").  Predominance does not require that all questions of

law or fact be common, but rather, that a significant aspect of the case "can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022.

Here, there are common questions of fact and law that are shared by members of both Classes stemming from Defendant's alleged failure to protect their personal information.  With respect to the Premium Overpayment Settlement Class, to establish liability each member must show that (i) Defendant was required to safeguard their Personal Sensitive Information in accordance with HIPAA, (ii) they paid money for such protections through their insurance premiums, and (iii) Defendant failed to adequately safeguard and protect their information. Likewise, each Identity Theft Class Members must show that (i) Defendant was required to safeguard their Personal Sensitive Information in accordance with HIPAA, (ii) Defendant failed to adequately protect their Sensitive Personal Information, and as a result (iii) they suffered identity theft.  Thus, the issues raised by Defendant's alleged failure to protect the Sensitive Personal Information of both Classes predominates over any issues affecting individual members (such as the amount of damages) and will be subject to common proof.  Accordingly, the predominance requirement is met.

### 2.    *A Class Action is the Superior Method for Adjudicating this Controversy*

Here, the class mechanism is superior to any other method available to fairly and efficiently adjudicate the claims of both Classes.  As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability."  *In re Checking*, 286 F.R.D. at 659; *see also In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (internal citations omitted).  At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1359 (11th Cir. 2002)).

Here, absent a class action, members of the Settlement Classes would almost certainly

find the cost of individually litigating their claims to be prohibitive, and multiple individual actions would be judicially inefficient given that each must address the same legal and factual arguments to prove their common claims.  Also, because this action has been settled, the Court need not concern itself with issues of manageability relating to trial.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).  Therefore, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## V.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer electronic privacy class actions.  *See, e.g.*, *In re Facebook Privacy Litig.*, No. 10-cv-02389-JW, dkt. 69 at *5 (N.D. Cal. Dec. 10, 2010) (recognizing that the attorneys at Edelson are "pioneer[s] in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue"); *Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (achieving adversarial certification in the largest-ever privacy class action); (*see also* Scharg Decl. ¶ 11.)  Further, proposed Class Counsel have devoted substantial time and resources to the investigation and prosecution of Plaintiffs' and the Classes' claims, having engaged in three years of hard-fought litigation in this case, and a successful appeal to the Eleventh Circuit.  (*Id*. ¶¶ 13-14.)

As a result of their efforts, proposed Class Counsel have successfully reached a

settlement with Defendant that provides landmark monetary relief, as well as the prospective relief necessary to protect Defendants' customers' electronically-stored information going forward.  Thus, the Court should appoint Jay Edelson, Ari J. Scharg, and Benjamin S. Thomassen of Edelson LLC as Class Counsel.

## VI.   THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL

After determining that a proposed settlement class is appropriate for certification, courts consider whether the proposed settlement itself warrants preliminary approval.  The procedure for review of a proposed class action settlement is a well-established two-step process.  ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38-39 (4th Ed. 2002).  The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."  NEWBERG, §11.25, at 38-39 (quoting MAN. FOR COMPLEX LITIG., §30.41 (3rd Ed. 1995)); *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007).  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010).  Settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.  *See* MANUAL FOR COMPLEX LITIG., §30.42 (3rd Ed. 1995).

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002).  Through the class action mechanism, class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future."  *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).  While district courts have discretion in

deciding whether to approve a proposed settlement, courts recognize that deference should be given to the consensual decision of the parties. *Warren*, 693 F. Supp. at 1054.

Here, there should be no question that the proposed Settlement is fair, reasonable, and adequate. To start, the process used to reach the settlement was fair. That is, the proposed Settlement was reached only after three years of hard-fought litigation, which included the exchange of formal and informal discovery, an appeal to the Eleventh Circuit, two separate rounds of in-person mediation facilitated by experienced third-party neutral Rodney A. Max— who has been described by another court in this district as "an eminently qualified mediator." *Fresco*, 2007 WL 2330895, at *5—and multiple rounds of arm's-length negotiations over ten months. (Scharg Decl. ¶ 14.) Moreover, the Parties agreed on the terms of the settlement through experienced counsel, who ensured that they had ample information at their disposal prior to the mediation sessions and during subsequent negotiations to evaluate the terms of any proposed agreement and to reach a fair and reasonable compromise. (Scharg Decl. ¶ 15.)

In terms of the relief provided by the Settlement itself, the fact that substantial money payments are available to the Classes weighs strongly in favor of a finding of reasonableness. First, Premium Overpayment Settlement Class members are entitled to recover $10 per year (up to $30), which represents reimbursements for data security that they paid for but allegedly did not receive. (*See* Agreement § 2.1(a).) The true measure of this recovery comes from comparing the *actual*, per-member cost of providing the missing security measures—e.g., what AvMed would have paid to provide encryption and password protection to laptop computers containing Personal Sensitive Information, and to otherwise comply with HIPAA's security regulations— against what Class members stand to receive through the Settlement. According to Plaintiffs' retained expert C. Matthew Curtin, *C.I.S.S.P.* (Certified Information Security Systems Professional), the per-person recovery here (i.e., $10 per year, up to $30) falls within the upper bounds of what any individual member of the Premium Overpayment Settlement Class might

recover through an actual trial on an unjust enrichment theory.[2]  Second, Identity Theft
Settlement Class members may submit claims for the amount of their losses.  (*Id.* § 2.1(b).)
Thus, the Settlement Agreement offers the greatest relief possible, and is deserving of
preliminary approval.

Given the robust notice plan (i.e., direct notice via email and First Class U.S. Mail, and
the creation of a Settlement Website), coupled with the ease with which Settlement Class
members may file claims (i.e., via electronic submission or hard-copy), along with the strong
prospective measures afforded by the Settlement, Class Counsel believes that the results
achieved are well within the range of possible approval.  (Scharg Decl. ¶16.)  Notwithstanding,
Plaintiffs also recognize that despite their belief in the strength of the claims at issue, the
expense, duration, and complexity of protracted litigation would be substantial, and the outcome
of trial is uncertain.  (*Id.* ¶ 17); *see also Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1322
(S.D. Fla. 2005) (noting that "uncertainties in outcome strongly favor approval of a negotiated
settlement").  Likewise, Defendant has repeatedly indicated that absent settlement it would
continue to aggressively defend this case, and that it would appeal any judgment ultimately
rendered in Plaintiffs' favor, which would further delay recovery by the Settlement Classes.
(Scharg Decl. ¶ 18).

Finally, the Court need not rule on a blank slate when it comes to the settlement's
fairness, reasonableness, and adequacy.  By making cash payments available to members of both
Classes—i.e., up to $30 to members of the Premium Overpayment Settlement Class, and identity
theft reimbursements to members of the Identity Theft Settlement Class members—the instant
Settlement exceeds the benefits conferred by other data breach settlements that have received
final approval from federal district courts throughout the country.  *See, e.g., Johansson-*
*Dohrmann v. Cbr Sys., Inc.,* No. 12-CV-1115 (S.D. Cal. July 24, 2013) (establishing a $2.5

---

[2]      At the time of the filing of this Motion, the expert report of C. Matthew Curtin was in the
process of being finalized and executed.  Plaintiffs intend to file Mr. Curtin's executed final
report by October 23, 2013.

million fund to provide approximately 300,000 class members with two years of credit monitoring and identity theft reimbursement); *Beringer v. Certegy Check Services, Inc.,* No. 07-cv-01657 (M.D. Fla. Sept. 3, 2008) (establishing a $5 million fund to provide approximately 37 million class members with up to two years of credit monitoring and identity theft reimbursement); *In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046 (S.D. Tex. 2012) (establishing a $2.4 million fund from which to provide over 100 million class members with identity theft reimbursement); *Rowe v. Unicare Life and Health Ins. Co.,* No. 09-cv-02286 (N.D. Ill. Sept. 14, 2011) (establishing a $3 million fund to provide approximately 220,000 class members with one year of credit monitoring, identity theft reimbursement, and *cy pres*).

For all of these reasons, Plaintiffs and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of approval. (Scharg Decl. ¶ 19.)  Accordingly, the Court should grant preliminary approval.

## VII.   THE NOTICES SHOULD BE APPROVED IN FORM AND SUBSTANCE

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides that "for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Rule 23(e)(1) similarly requires that the notice be reasonably disseminated to those who would be bound by the court's judgment.  Further, notice is proper as long as the average class member would be able to understand it, NEWBERG § 11:53 at 167, and the substance of the notice must describe the nature of the action, the definition of the class to be certified, and the class claims and defenses at issue.  *See* Fed. R. Civ. P. 23(c)(2)(B). It must also explain that settlement class members may enter an appearance through counsel or request to be excluded from the settlement class so as not to be bound by any judgment.  *Id*.

The Parties have agreed upon a multi-part notice plan that easily satisfies the

requirements of both Rule 23 and Due Process.  First, the Settlement Administrator will send direct notice via email to all persons who are potential members of the Settlement Classes (i.e., all 1.2 million individuals affected by the 2009 Incident), and whose email address are located in AvMed's database.[3]  The e-mail itself will include a hyperlink to the Settlement Website, www.databreachsettlement.com, which serves as the "long-form" notice, provides access to relevant court documents, and allows Class Members to electronically submit claim forms online.  (Agreement § 4.2(a), (c); Exs. 1-A, 1-B,1- C, and 1-E.)  For those potential members whose email addresses are not contained in AvMed's database, the Settlement Administrator shall send direct postcard notice via First Class U.S. Mail.  (Agreement § 4.2(b), Ex. D.)  Finally, Defendant will serve notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten (10) days after it is filed with the Court, to the Attorneys General of each State, the Attorney General of the United States, and other required government officials.  (*Id.* § 4.2(d).)

In sum, the Court should find that the proposed methods for providing notice to the Classes comports with both Rule 23 and Due Process, and should be approved by the Court.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement, (ii) certifying the proposed Settlement Classes for settlement purposes, (iii) approving the form and content of the notice to the members of the Settlement Classes, (iv) appointing Plaintiffs as Class Representatives, (v) appointing Plaintiffs' counsel as Class Counsel, (vi) scheduling a Fairness Hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.[4]

---

[3]      In the event an email "bounces back," the Settlement Administrator will attempt to resend the notice via email, and will also send the notice via First Class U.S. Mail.  (Agreement § 4.2(a).)

Dated: October 21, 2013

Respectfully submitted,

JUANA CURRY and WILLIAM MOORE,
individually and on behalf of a class of similarly
situated individuals

By: /s/ Ari J. Scharg

Jay Edelson (*Pro Hac Vice*)
Ari J. Scharg (*Pro Hac Vice*)
Benjamin S. Thomassen (*Pro Hac Vice*)
Edelson LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel.: (312) 589-6370
Fax: (312) 589-6378
jedelson@edeslon.com
ascharg@edelson.com
bthomassen@edelson.com

By: /s/ Edmund A. Normand

Edmund A. Normand
Florida Bar No. 865590
Diego M. Madrigal, III
Florida Bar No. 0037643
Wooten, Kimbrough, & Normand, P.A.
236 S. Lucerne Circle
Orlando, Florida 32801
Tel.: (407) 843-7060
Fax: (407) 843-5836

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Edmund A. Normand, and attorney, hereby certify that on October 21, 2013, I served the above and forgoing ***Plaintiffs' Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement***, on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system, on this, the 21st day of October, 2013.

/s/ Edmund A. Normand