# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
Case No. 10-cv-24513-JLK

| | |
|---|---|
| JUANA CURRY and WILLIAM MOORE, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| AVMED, INC., d/b/a AVMED, a Florida Corporation, | ) ) ) |
| Defendant. | ) ) ) |

## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into by and among (i) the Plaintiffs Juana Curry ("Curry") and William Moore ("Moore"); (ii) the Settlement Classes (as defined herein) (the Settlement Classes and Plaintiffs Curry and Moore are collectively herein referred to as the "Plaintiffs" unless otherwise noted); and (iii) Defendant AvMed, Inc. ("Defendant" or "AvMed").  The Plaintiffs and the Defendant are collectively referred to herein as the "Parties."  This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as the term is defined below), upon and subject to the terms and conditions of this Settlement Agreement, and subject to the final approval of the Court.

## RECITALS

A.    In December, 2009, two company laptop computers were stolen from a locked conference room inside of one of AvMed's corporate buildings in Gainesville, Florida. After conducting an investigation, AvMed notified current and former members that, as a result of the

theft, there was a possible compromise of their information, including names, addresses, dates of birth, Social Security numbers and health-related information.

B.      On November 16, 2010, Plaintiffs Jean Resnick, Miguel Vasquez, Christopher Atkinson, Rochel Albertson, and Kirsten Atkinson filed a putative class action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Civil Division, captioned *Resnick, et. al v. AvMed, Inc, d/b/a AvMed*, Case No. 10-60022-CA-08 (the "Miami-Dade County Action") alleging claims for damages and injunctive relief against Defendant AvMed for failing to properly safeguard their personal health information in accordance with the standards set forth by the Health Insurance Portability and Accountability Act, 45 C.F.R. § 164.302, *et seq.* ("HIPAA Regulations").

C.      On December 17, 2010, AvMed removed the Miami-Dade County Action to the United States District Court for the Southern District of Florida, at which time it was assigned Case No. 10-cv-24513 (the "Action").

D.      On January 14, 2011, Plaintiffs filed a First Amended Complaint. (Dkt. No. 15.)

E.      On February 18, 2011, AvMed moved to dismiss the First Amended Complaint. (Dkt. No. 23.)  After full briefing, the District Court granted AvMed's motion on April 5, 2011 without prejudice, and granted Plaintiffs leave to file a Second Amended Complaint to address those pleading deficiencies identified in the dismissal order. (Dkt. No. 30.)

F.      On April 25, 2011, Plaintiffs filed a Second Amended Complaint. (Dkt. No. 31.)

G.      On May 12, 2011, AvMed again moved to dismiss. As before, and after a full round of briefing, the District Court granted AvMed's motion on July 12, 2011—this time with prejudice.  (Dkt. No. 33.)

H.      Shortly thereafter, on August 9, 2011, Plaintiffs filed their notice of appeal of the

District Court's second dismissal order to the United States Court of Appeals for the Eleventh Circuit. (Dkt. No. 42.)

I.      On September 5, 2012, after considering the briefing and oral argument, the Eleventh Circuit affirmed in part and reversed in part the District Court's second dismissal order. The Eleventh Circuit affirmed the District Court's dismissal of Plaintiffs' claims for negligence *per se* and breach of the implied covenant of good faith and fair dealing, but reversed the District Court's dismissal of the remaining five counts for negligence, breach of contract, breach of implied contract, breach of fiduciary duty and restitution/unjust enrichment. As such, the case was remanded to the Southern District of Florida for further proceedings on October 9, 2012. (Dkt. No. 50.)

J.      Following remand, and on October 23, 2012, AvMed answered the Second Amended Complaint (Dkt. No. 51), and separately moved to strike the class allegations, which the District Court denied—on November 15, 2012—after receiving briefing from the Parties. (Dkt. No. 58.)

K.      On November 19, 2012, and following the District Court's denial of AvMed's motion to strike class allegations, the Parties agreed to meet and confer to discuss certain scheduling issues. During the meeting, the Parties also engaged in preliminary settlement discussions and agreed to attempt to resolve this matter through private mediation. Shortly thereafter, the Parties selected Rodney A. Max of the Upchurch Watson White & Max Mediation Group to facilitate the mediation process.

L.      On January 18, 2013, the Parties met for a formal, in-person mediation with Mr. Max in Miami, Florida. Over the course of that day, the Parties engaged in productive discussions and agreed to continue speaking.

M.     Over the next six months, the Parties engaged in several additional rounds of arm's-length negotiations, guided by Mr. Max, and engaged in a second day of in-person mediation on April 11, 2013.   With the assistance of Mr. Max, through this subsequent mediation, the Parties made substantial progress toward a classwide settlement, but were unable to resolve certain remaining issues.   Nonetheless, the Parties agreed to continue negotiating in the hopes of reaching a settlement.

N.     Finally, on May 19, 2013, after several additional rounds of arm's-length negotiations presided over by Mr. Max, the Parties were able to resolve all remaining issues and reach an agreement on the principal terms of a settlement. At all times, Defendant has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that it committed, or threatened, or attempted to commit any wrongful act or violation of law or duty alleged in the Action.   Defendant also denies: (1) each and all of the claims and contentions alleged by Plaintiff in the Action; (2) all charges of wrongdoing or liability against them or their agents arising out of any conduct, statements, acts or omissions alleged in the Action; and (3) that Plaintiff or the Settlement Classes are entitled to any form of damages based on the conduct alleged in the Action.   In addition, Defendant maintains that it has meritorious defenses to the claims alleged in the Action and was prepared to vigorously defend all aspects of the Action.   Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendant has concluded that further defense of the Action would be protracted, risky, burdensome, and expensive, and that it is desirable and beneficial to it that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement.   This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of or an

admission or concession of liability or wrongdoing on the part of Defendant, or any of the Released Parties (defined below), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

O.      Plaintiffs believe that the claims asserted in the Action against the Defendant have merit and that they would have ultimately been successful in adversarial certification of the proposed classes under Rule 23 and prevailing on the merits at summary judgment or trial. Nonetheless, Plaintiffs and Settlement Class Counsel recognize and acknowledge that Defendants have raised factual and legal defenses in the Action that present a risk that Plaintiffs may not prevail.  Plaintiffs and Settlement Class Counsel also have taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulties and delays inherent in such litigation.  Therefore, Plaintiffs believe that it is desirable that the Released Claims be fully and finally compromised, settled and resolved with prejudice, and barred pursuant to the terms set forth herein.  Based on their evaluation, Settlement Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable and adequate to the Settlement Classes, and that it is in the best interests of the Settlement Classes to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

P.      Given all the above, and considering all other risks and uncertainties of continued litigation and all factors bearing on the merits of settlement, the Parties are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable, adequate, and in their respective best interests.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs Curry and Moore, the Settlement Classes, and each of them, and Defendant, by and through their respective undersigned counsel that, subject to final approval of the Court after a

hearing or hearings as provided for in this Settlement Agreement, in consideration of the benefits flowing to the Parties from the Settlement Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

**AGREEMENT**

## 1.    DEFINITIONS

As used in this Settlement Agreement, the following terms have the meanings specified below:

**1.1    "Approved Identity Theft Claim"** means an Identity Theft Claim Form submitted by an Identity Theft Settlement Class Member that: (a) is submitted timely and in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement; (b) is signed by the claimant, physically or electronically, subject to penalties of perjury; (c) identifies actual, documented, and unreimbursed losses which resulted from Identity Theft caused by the December 2009 Incident (excluding any charge initiated with the Identity Theft Settlement Class Member's authorization) that occurred during the time period from December 10, 2009 through the Claims Deadline; (d) is accompanied by proof of such losses such as police reports, correspondence with governmental agencies, correspondence with financial institutions or credit card companies, and/or banking, brokerage, or credit card records; and (e) demonstrate that the claimant's Identity Theft more likely than not was proximately caused by the December 2009 Incident.

**1.2    "Approved Premium Overpayment Claim"** means a Premium Overpayment Claim Form submitted by a Premium Overpayment Settlement Class Member that: (a) is

submitted timely and in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement; (b) is signed by the claimant, physically or electronically, subject to penalties of perjury; and (c) provides the information requested by the Premium Overpayment Claim Form, including the claimant's name, address, telephone number, which years and the total number of years that he or she has paid Defendant for insurance.

1.3 **"Claims Deadline"** means the date by which all Claims Forms must be postmarked or received to be considered timely and shall be, subject to Court approval, thirty (30) days after entry of the Final Judgment. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order and in the Final Judgment as well as in the Notice and the Claim Forms.

1.4 **"Claim Forms"** refers collectively to the Premium Overpayment Claim Form and Identity Theft Claim Form.

1.5 **"Class List"** means a list that Defendant shall comprise based upon records in its possession that identify the Persons whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident. The Defendant shall provide the Settlement Administrator with the Class List within seven (7) days after Preliminary Approval.

1.6 **"Class Representatives"** means the named Plaintiffs in this Action, William Moore and Juana Curry.

1.7 **"Court"** means the United States District Court for the Southern District of Florida, Judge James Lawrence King, or any judge who shall succeed him as the Judge in this Action, presiding.

1.8 **"December 2009 Incident"** means or refers to the theft of two laptop computers from AvMed's Gainesville, Florida facilities on or about December 10, 2009.

**1.9**    **"Defendant"** means Defendant AvMed, Inc.

**1.10**    **"Defendant's Counsel"** means John J. Delionado, Neil K. Gilman, and Paulo R. Lima of Hunton Williams, LLP.

**1.11**    **"Effective Date"** means the date ten (10) days after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

**1.12**    **"Fee Award"** means the amount of attorneys' fees and reimbursement of expenses awarded by the Court to Settlement Class Counsel.

**1.13**    **"Final Approval"** means one business day following the later of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award or incentive award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

**1.14**    **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, the Fee Award, and the incentive award to the Class Representatives.

**1.15**    **"Final Judgment"** means the Final Judgment and Order to be entered by the Court approving the Settlement after the Final Approval Hearing.

**1.16**    **"Identity Theft"** means the use of an Identity Theft Settlement Class Member's

Sensitive Personal Information, without his or her knowledge, to commit fraud or other crimes.

    **1.17** **"Identity Theft Claim Form"** means the document substantially in the form attached hereto as Exhibit B, as approved by the Court.  The Identity Theft Claim Form, to be completed by Identity Theft Settlement Class Members who wish to file a claim for a payment for unreimbursed Identity Theft losses pursuant to this Agreement, shall be available in paper and electronic format.

    **1.18** **"Identity Theft Settlement Class"** means all current and former AvMed customers whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident, and who suffered Identity Theft and incurred unreimbursed losses as a result.

    **1.19** "**Identity Theft Settlement Class Members"** refers to all Persons that fall within the definition of the Identity Theft Settlement Class.

    **1.20** **"Mediator"** means Rodney A. Max of Upchurch Watson White & Max Mediation Group.

    **1.21** **"Notice"** means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to members of the Settlement Classes substantially in the manner set forth in this Agreement, is consistent with the requirements of Due Process, Rule 23, and is substantially in the form of Exhibits C, D, and E hereto.

    **1.22** **"Notice Date"** means the date by which the Notice Plan set forth in Paragraph 4.2 is complete, which shall be a date no later than sixty (60) days after entry of the Preliminary Approval Order.

    **1.23** **"Notice Plan"** means the proposed plan of disseminating notice to members of the Settlement Classes of the proposed Settlement Agreement and of the Final Approval Hearing.

**1.24** **"Objection/Exclusion Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Classes must be postmarked and/or filed with the Court, which shall be designated as a date no later than forty-five (45) days after the Notice Date, or such other date as ordered by the Court.

**1.25** **"Parties"** or **"Settling Parties"** means Plaintiffs Juana Curry and William Moore, the Premium Overpayment Settlement Class Members, the Identity Theft Settlement Class Members, and Defendant AvMed, Inc., collectively.

**1.26** **"Person"** shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns. The definition of "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General's office.

**1.27** **"Plaintiff Curry" or "Curry"** means Juana Curry.

**1.28** **"Plaintiff Moore" or "Moore"** means William Moore.

**1.29** **"Plaintiffs"** means Plaintiffs Juana Curry and William Moore, the Premium Overpayment Settlement Class Members, and the Identity Theft Settlement Class Members, collectively.

**1.30** **"Preliminary Approval"** means the Court's certification of the Settlement Classes for settlement purposes, preliminary approval of the Settlement Agreement, and approval of the form of the Notice and of the Notice Plan.

**1.31** **"Preliminary Approval Order"** means the proposed order preliminarily approving the Agreement and directing notice thereof to the Settlement Classes, to be submitted

to the Court in conjunction with Plaintiffs' motion for Preliminary Approval of the Agreement.

**1.32** **"Premium Overpayment Claim Form"** means the document substantially in the form attached hereto as Exhibit A, as approved by the Court. The Premium Overpayment Claim Form, which is to be completed by members of the Premium Overpayment Settlement Class who wish to file a claim for reimbursement of premiums pursuant to this Agreement, shall be available in paper and electronic format.

**1.33** **"Premium Overpayment Settlement Class"** means all current and former AvMed customers who, prior to December 2009, paid AvMed for insurance, and whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident.

**1.34** **"Premium Overpayment Settlement Class Members"** refers to all Persons that fall within the definition of the Premium Overpayment Settlement Class.

**1.35** **"Released Claims"** means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, disclosed or undisclosed, claims, demands, liabilities, rights, judgments, liens, losses, debts, guarantees, penalties, indemnities, actions, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, based on any federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of, concerning, or in connection with any of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions, or

failures to act regarding AvMed's allegedly insufficient maintenance and protection of the Settlement Classes' personal health information, including any that caused the December 2009 Incident, and any resulting instances of Identity Theft arising therefrom, that were or could have been alleged or asserted in the Action relating to the December 2009 Incident, belonging to any and all Plaintiffs and Releasing Parties, including, but not limited to, negligence, breach of contract, breach of implied contract, breach of fiduciary duty and restitution/unjust enrichment, negligence per se and breach of the implied covenant of good faith and fair dealing.

      **1.36**    **"Released Parties"** means Defendant AvMed, Inc. and any and all of its present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents (including SantaFe HealthCare), holding companies, divisions or other related entities, sister or affiliated companies, subsidiaries, associates, employers, employees, agents, consultants, independent contractors, vendors, insurers, directors, managing directors, officers, partners, principals, fiduciaries, investors, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and Persons, firms, trusts, corporations, officers, directors, other individuals or entities in which Defendant has a controlling interest or which is affiliated with any of them, or any other representatives of any of these Persons and entities.  For purposes of clarity, "Released Parties" does not encompass the individual(s) responsible for stealing laptop computers from AvMed's facilities, or otherwise contributing in any way to the December 2009 Incident.

      **1.37**    **"Releasing Parties"** means Plaintiffs; those members of the Settlement Classes who do not request to be excluded from the Settlement Classes (whether or not such members submit Claim Forms); to the extent a member of either Settlement Class is not an individual, all

of its present, former, and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, franchisees, successors, predecessors-in-interest, and all of the aforementioned's present, former, and future officers, directors, employees, shareholders, attorneys, agents, independent contractors; and, to the extent a member of either Settlement Class is an individual, any present, former, and future spouses, as well as the present, former, and future heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of each of them.

**1.38** **"Remaining Funds"** means the amount of the Settlement Fund remaining after the payments of Approved Identity Theft Claims, Approved Premium Overpayment Claims, Settlement Administration Expenses, incentive award to Class Representatives, fees of the Special Master, and the Fee Award, if any.

**1.39** **"Sensitive Personal Information"** means or refers to Personal Information as defined in Florida Statute § 817.5681(5), and/or Protected Health Information as set forth in 42 U.S.C. §1301, et seq., including its implementing regulations and the Privacy Rule, 45 C.F.R. §§ 160.102 & 160.103, and includes the information that was contained on the two laptops that were stolen during the December 2009 Incident.

**1.40** **"Settlement Administration Expenses"** means the expenses incurred by the Settlement Administrator in providing Notice to the Settlement Classes and processing claim forms, as well as any costs incurred in sending the CAFA notices described in Paragraph 4.2(d) below. All such Settlement Administration Expenses shall be paid from the Settlement Fund.

**1.41** **"Settlement Administrator"** means, subject to Court approval, the firm of Garden City Group, Inc., which has been selected by the Parties to oversee the distribution of Notice as well as the processing and payment of claims to the Settlement Classes as set forth in

this Settlement Agreement.

**1.42** **"Settlement Agreement" or "Agreement"** means the settlement contemplated by this Settlement Agreement.

**1.43** **"Settlement Class Counsel"** means Jay Edelson, Ari J. Scharg, and Benjamin S. Thomassen of Edelson LLC.

**1.44** **"Settlement Classes"** refers collectively to the Premium Overpayment Settlement Class and Identity Theft Settlement Class.

**1.45** **"Settlement Fund"** means a claims-made fund that is established by the Defendant in the amount of three million dollars ($3,000,000.00). From this Settlement Fund, Defendant shall pay all costs associated with the Settlement, including (i) Approved Identity Theft Claims, (ii) Approved Premium Overpayment Claims, (iii) Settlement Notice and Administrative Expenses, (iv) the Fee Award, and (v) incentive awards to the Class Representatives. The Settlement Fund represents the limit and extent of Defendant's monetary obligations under this Agreement for the payments of Approved Claims, Settlement Notice and Administrative Expenses, the Fee Award, and incentive awards to the Class Representatives.

**1.46** **"Special Master"** means Rodney Max or such other independent person to be agreed upon by the Parties or appointed by the Court to evaluate those Claim Forms submitted by purported members of the Settlement Classes, the acceptance or rejection of which has been challenged by Defendant or Settlement Class Counsel.

**1.47** **"Unknown Claims"** means claims that could have been raised in the Action and that the Plaintiffs or any or all other Persons and entities whose claims are being released, or any of them, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or

its decision to agree, object or not to object to the Settlement.  Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are being released shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are being released, also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever to settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

## 2.    SETTLEMENT RELIEF

### 2.1    Payments.

#### (a)    Payments Available to the Premium Overpayment Settlement Class.

Premium Overpayment Settlement Class Members shall have until the Claims Deadline to submit an Approved Premium Overpayment Claim. Defendant agrees to pay or cause to be paid from the Settlement Fund a sum of ten dollars ($10.00) for each year or partial year that the Premium Overpayment Settlement Class Member paid AvMed for insurance coverage prior to the December 2009 Incident, subject to a maximum recovery of thirty dollars ($30.00).  In the

event that the Settlement Administrator receives a Premium Overpayment Claim Form that is facially incomplete, the Settlement Administrator shall request from the claimant, in writing, additional information ("Claim Supplementation"), that shall be provided by the claimant within forty-five days (45) of the request.  If the Claim Supplementation fails to provide sufficient additional information to render the claim form facially complete, then that the claim shall be rejected and shall not be paid.

**(b)**      **Payments Available to the Identity Theft Settlement Class.**

Identity Theft Settlement Class Members shall have until the Claims Deadline to submit an Approved Identity Theft Claim.   Defendant agrees to reimburse each Identity Theft Settlement Class Member for the amount of any proven actual, monetary loss that is claimed and shown by the claimant to have occurred more likely than not as a result of the December 2009 Incident, regardless of whether said claimant elects to also make a claim as a Premium Overpayment Settlement Class Member under this Settlement.  Each reimbursable loss must be (1) an actual, documented, and unreimbursed loss as required by the Claim Form, (2) which resulted from Identity Theft caused by the December 2009 Incident (excluding any charge initiated with the Identity Theft Settlement Class Member's authorization), (3) that occurred during the time period from December 10, 2009 through the Claims Deadline, and (4) signed under penalty of perjury.  In the event that the Settlement Administrator receives an Identity Theft Claim Form that is facially incomplete, the Settlement Administrator shall request Claim Supplementation, which shall be provided by the claimant within forty-five days (45) of the request.  If the Claim Supplementation fails to provide sufficient additional information to render the claim form facially complete, then that the claim shall be rejected and shall not be paid.  A sum of Two Hundred and Fifty Thousand dollars ($250,000.00) shall be allocated from the

Settlement Fund to pay Approved Identity Theft Claims, and any funds remaining shall be made available to pay Approved Premium Overpayment Claims.

      **(c)**    Claimants that are members of both the Premium Overpayment Settlement Class and the Identity Theft Settlement Class may file both a Premium Overpayment Claim Form and an Identity Theft Claim Form.

      **(d)**    If, after deducting the amounts paid pursuant to Paragraph 1.45(iii), (iv), and (v), the amount remaining in the Settlement Fund is less than the total amount of Approved Identity Theft Claims and Approved Premium Overpayment Claims, then the amount paid to members of the Identity Theft Settlement Class and the Premium Overpayment Settlement Class who submitted an Approved Claim shall be reduced *pro rata* so that the total payments made shall not exceed Three Million Dollars ($3,000,000.00).

      **(e)**    **Remaining Funds.**  The Remaining Funds are the property of the Defendant.  In no event will the Remaining Funds constitute abandoned or unclaimed property, and the Defendant is entitled to all such Remaining Funds.

      **(f)**    Within sixty (60) days after the Effective Date has occurred, or within thirty (30) days of the Settlement Administrator and/or the Special Master adjudicating all claims including those challenged pursuant to Paragraph 5.3 below, whichever is later, the Settlement Administrator shall pay all Premium Overpayment Approved Claims from the Settlement Fund by check and mail them to the claimants via First Class U.S. Mail.

      **(g)**    Within sixty (60) days after the Effective Date has occurred, or within thirty (30) days of the Settlement Administrator and/or the Special Master adjudicating all claims including those challenged pursuant to Paragraph 5.4 below, whichever is later, the Settlement Administrator shall pay all Approved Identity Theft Claims from the Settlement Fund by check

and mail them to the claimants via First Class U.S. Mail.

(h)     All cash payments issued to members of the Settlement Classes via check will state on the face of the check that the check will expire and become null and void unless cashed within ninety (90) days after the date of issuance.  To the extent that a check issued to a member of the Settlement Classes is not cashed within ninety (90) days after the date of issuance, the check will be void, and such funds shall revert to the Settlement Fund.  In no event will the funds represented by an uncashed check constitute abandoned or unclaimed property, and the Defendant is entitled to all such funds as part of the Remaining Funds.

(i)     Within one hundred eighty (180) days after the Effective Date has occurred, the Settlement Administrator shall pay to the Defendant, unless otherwise notified beforehand, all remaining monies in the Settlement Fund.  In the event there should be any monies remaining in or returned to the Settlement Fund more than one hundred eighty (180) days after the Effective Date, then the Settlement Administrator shall repay such funds to the Defendant.

2.2     **Prospective Relief.**  AvMed has or will have implemented by the Final Approval Hearing the following: (1) mandatory security awareness and training programs for all company employees; (2) mandatory training on appropriate laptop use and security for all company employees whose employment responsibilities include accessing information stored on company laptop computers; (3) upgrade all company laptop computers with additional security mechanisms, including GPS tracking technology; (4) new password protocols and full disk encryption technology on all company desktops and laptops so that electronic data stored on such devices would be encrypted at rest; (5) physical security upgrades at company facilities and offices to further safeguard workstations from theft; (6) the review and revision of written

policies and procedures to enhance information security.

**3.     RELEASES**

**3.1**     The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

**3.2**     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Parties, and each of them.

**4.     NOTICE TO THE CLASS**

**4.1.**     Upon issuance of Preliminary Approval of this Agreement, the Settlement Administrator shall cause the Settlement Class Notices describing the Fairness Hearing and the terms of the settlement embodied in this Agreement to be disseminated to the Settlement Classes, pursuant to the dates and terms described in Section 4.2 below. Such notice shall comport with due process and be effectuated pursuant to the Notice Plan.

**4.2.**     The Notice Plan shall include:

**(a)     Direct Notice by Electronic Mail**.     Within thirty (30) days after Preliminary Approval, Defendant shall, based upon a review of the business records and data in its possession, custody or control, disseminate the Class Notice via electronic mail to any and all Persons who are potential members of the Settlement Classes.  E-mail notice shall be sent to those Class Members for which Defendant has an e-mail address by no later than the Notice Date, will be substantially in the form attached as Exhibit C, and will bear an electronic link to the Internet Publication Notice (as identified below).  In the event that the transmission of such email notice results in any "bounce-backs," Defendant shall make a second attempt to re-send the email notice, and will additionally send notice via U.S. Mail pursuant to Paragraph 4.2(b),

below.

        **(b)**     **Direct Notice by U.S. Mail.**  Within thirty (30) days after Preliminary Approval, Defendant shall provide the Settlement Administrator with a list of all known U.S. mailing addresses for those Class Members whose email addresses are not contained in its business records or database. The Settlement Administrator shall send postcard notice substantially in the form attached as Exhibit D to each such physical address by First Class U.S. Mail by no later than the Notice Date.

        **(c)**     **Internet Publication Notice**. Within ten (10) days following the entry of the Preliminary Approval Order, Notice shall be provided on a website at www.databreachsettlement.com, which shall be administered by the Settlement Administrator and shall include the ability to file Claim Forms online.  The Notice on the Website shall be substantially in the form of Exhibit E attached hereto.

        **(d)**     **CAFA Notice.**  Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, Defendant shall serve upon the Attorneys General of each U.S. State, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law.

    **4.3.**    The Notice Plan shall be conducted jointly with respect to the Premium Overpayment Settlement Class and Identity Theft Settlement Class.  The Notice shall advise members of the Premium Overpayment Settlement Class and the Identity Theft Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or its terms.  The Notice shall specify that any objection to this Settlement Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Final Approval Hearing, only if, on or before the Objection/Exclusion Deadline approved

by the Court and specified in the Notice, the Person making an objection files notice of his or her intention to do so and at the same time (a) files copies of such papers he or she proposes to submit at the Final Approval Hearing with the Clerk of the Court, (b) files copies of such papers through the Court's CM/ECF system if the Person is represented by counsel, and (c) sends copies of such papers via mail, hand, or overnight delivery service to both Settlement Class Counsel and Defendant's Counsel.

4.4.    Any member of the Premium Overpayment Settlement Class and the Identity Theft Settlement Class who intends to object to this Settlement Agreement must include his/her name and address, include all arguments, citations, and evidence supporting the objection (including copies of any documents relied on), state that he or she is a member of the Premium Overpayment Settlement Class and/or the Identity Theft Settlement Class and provide a statement about whether the objector intends to appear at the Final Approval Hearing with or without counsel.  Any member of the Premium Overpayment Settlement Class or the Identity Theft Settlement Class who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Section and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Settlement Agreement by appeal or other means and shall be deemed to have waived his, her, or its objections and be forever barred from making any such objections in the Action or any other action or proceeding.  To be valid, the objection must be filed and sent to Settlement Class Counsel and Defendant's Counsel on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.

**4.5.** Any member of the Premium Overpayment Settlement Class or the Identity Theft Settlement Class may request to be excluded from the Premium Overpayment Settlement Class and/or Identity Theft Settlement Class in writing by a request postmarked on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice. In order to exercise the right to be excluded, a member of the Premium Overpayment Settlement Class and/or the Identity Theft Settlement Class must timely send a written request for exclusion to the Settlement Administrator providing his/her name and address, a signature, the name and number of the case, and a statement that he/she wishes to be excluded from the Premium Overpayment Settlement Class and/or Identity Theft Settlement Class. A request to be excluded that does not include all of the foregoing information, or that is sent to an address other than that designated in the Class Notice, or that is not postmarked within the time specified shall be invalid and the persons or entities serving such a request shall be members of the Premium Overpayment Settlement Class and/or Identity Theft Settlement Class and shall be bound as a Premium Overpayment Settlement Class Member and/or Identity Theft Settlement Class Member by the Agreement, if approved. Any member of the Premium Overpayment Settlement Class or Identity Theft Settlement Class who elects to be excluded shall not: (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to object to any aspect of this Settlement Agreement. The request for exclusion must be personally signed by the Person requesting exclusion. So called "mass" or "class" opt-outs shall not be allowed. To be valid, a request for exclusion must be postmarked or received by the date specified in the Notice.

**5.    SETTLEMENT ADMINISTRATION**

**5.1** The Settlement Administrator shall, under the supervision of the Court, administer

the relief provided by this Settlement Agreement by processing Claim Forms in a rational, responsive, cost effective and timely manner.   The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement.   The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Settlement Class Counsel and Defendant's Counsel, the Parties and/or their representatives upon request.   The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.   The Settlement Administrator shall provide Settlement Class Counsel and Defendant's Counsel with information concerning Notice, administration and implementation of the Settlement Agreement.   Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts from the Settlement Fund paid to members of the Settlement Classes on account of Approved Claims. Without limiting the foregoing, the Settlement Administrator shall:

(a)     Forward to Defendant's Counsel, with copies to Settlement Class Counsel, all original documents and other materials received in connection with the administration of the Settlement Agreement, and all copies therefore, within thirty (30) days after the date on which all Claim Forms have been finally approved or disallowed per the terms of the Settlement Agreement;

(b)     Receive exclusion forms and other requests from members of the Settlement Classes to exclude themselves from the Settlement Agreement and promptly provide to Settlement Class Counsel and Defendant's Counsel a copy thereof upon receipt.   If the Settlement Administrator receives any exclusion forms or other requests from members of the

Settlement Classes after the Objection/Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Settlement Class Counsel and Defendant's Counsel;

**(c)** Provide reports and/or summaries to Settlement Class Counsel and Defendant's Counsel, the Parties and/or their representatives as provided in the contract to be entered into by Defendant with the Settlement Administrator, including without limitation, reports regarding the number of Claim Forms received and the amount of benefits sought, the number thereof approved by the Settlement Administrator, and the categorization and description of Claim Forms rejected, in whole or in part, by the Settlement Administrator; and

**(d)** Make available for inspection by Settlement Class Counsel or Defendant's Counsel, the Parties and/or their representatives the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

**5.2** The Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse or fraud, and shall reject a Claim Form, or any part of a claim for a payment reflected therein, where the name provided on a Claim Form does not appear on the Class List or where there is evidence of abuse or fraud. The Settlement Administrator shall also reject a Claim Form that does not contain all requested information necessary to screen the claim for fraud or abuse, after giving the claimant a reasonable opportunity to provide any requested missing information.

**5.3 Challenging Premium Overpayment Claims.** Defendant's Counsel and Settlement Class Counsel shall have the right to challenge the acceptance or rejection of submitted Premium Overpayment Claim Forms submitted by Premium Class Members. The Settlement Administrator shall follow any agreed to decisions of Defendant's Counsel and Settlement Class Counsel. To the extent Defendant's Counsel and Settlement Class Counsel are

not able to agree on the disposition of a challenge, the Special Master shall timely decide such challenge.   The Parties agree that the Settlement Administrator shall thereafter follow the decision of the Special Master resulting from any such challenge.

      **5.4**      **Challenging Identity Theft Claims.**  The Settlement Administrator shall forward all facially completed Claim Forms to the Parties.   All forwarded claims shall be paid by Defendant, subject to the resolution of any challenges by Defendant as described in this paragraph.   Before any Identity Theft Settlement Class Member can be reimbursed for actual losses, Defendant may, within thirty (30) days from the Claims Deadline, challenge the validity of the claim. Defendant's challenge shall be resolved by a Special Master and shall be limited to two issues: (1) was the claimant's Identity Theft more likely than not proximately caused by the December 2009 Incident and, if so, (2) what are the resulting actual damages?  Once Defendant makes a challenge, the Parties may request additional Claim Supplementation from the claimant, which shall be provided within forty-five days (45) of the request.   The Special Master's decision shall be based solely upon the submitted Identity Theft Claim Form, any writings provided by Defendant (in support of its belief that the claim is not valid) and Settlement Class Counsel (in support of their belief that the claim is valid), and any Claim Supplementation provided by the claimant. The ultimate decision of the Special Master as to the challenge shall be final and non-appealable.   All fees and expenses of the Special Master associated with a challenge under this subsection shall be the sole obligation of and paid for by Defendant, and shall be in addition to and separate from the Settlement Fund.   All other fees and expenses associated herewith shall be borne by the party incurring them.   The Parties agree that the Settlement Administrator shall thereafter follow the decision of the Special Master resulting from any such challenge.

      **5.5**      Any member of the Settlement Classes who does not, in accordance with the

terms and conditions of this Agreement, seek exclusion from the Settlement Classes or timely file a Claim Form will not be entitled to receive any cash award or any other benefits pursuant to this Settlement Agreement, but will otherwise be bound together with all members of the Settlement Classes by all of the terms of this Settlement Agreement, including the terms of the Final Judgment to be entered in the Action and the releases provided for in the Agreement, and will be barred from bringing any action against any of the Released Parties concerning the Released Claims.

**5.6** Settlement Class Counsel and Defendant's Counsel each agree to keep all information about the settlement administration process—including without limitation all information received pursuant to Paragraph 5 of this Agreement, such as claims reports, information concerning opt-outs, and the Class List—confidential and may use it only for purposes of effectuating this Agreement.

## 6. TERMINATION OF SETTLEMENT

**6.1** Subject to Paragraph 9 below, the Class Representatives, on behalf of the Settlement Classes, or Defendant, shall have the right to terminate this Settlement Agreement by providing written notice of the election to do so ("Termination Notice") to all other Parties hereto within ten (10) days, of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) the date upon which an Alternative Judgment, as defined in Paragraph 9.1 of this Agreement is modified or reversed in any material respect by the Court of Appeals or the

Supreme Court.

## 7.    PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER

**7.1**    Promptly after the execution of this Settlement Agreement, Settlement Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for Preliminary Approval of the settlement set forth in this Agreement, certification of the Settlement Classes for settlement purposes only, appointment of Settlement Class Counsel and the Class Representatives, and entry of a Preliminary Approval Order, which order shall set a Final Approval Hearing date and approve the Notice and Claim Forms for dissemination in accordance with the Notice Plan, substantially in the form of Exhibits C, D, and E.

**7.2**    At the time of the submission of this Settlement Agreement to the Court as described above, Settlement Class Counsel and Defendant's Counsel shall request that, after Notice is given, the Court hold a Final Approval Hearing and approve the settlement of the Action as set forth herein.

**7.3**    After Notice is given, the Parties shall request and obtain from the Court a Final Judgment.  The Final Judgment will (among other things):

**(a)**    find that the Court has personal jurisdiction over all members of the Settlement Classes and that the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto;

**(b)**    approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the members of the Settlement Classes; direct the Parties and their counsel to implement and consummate the Settlement Agreement according to its terms and provisions; and declare the Settlement Agreement to be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other

proceedings maintained by or on behalf of Plaintiffs and all other members of the Settlement Classes, Releasing Parties, and their heirs, executors and administrators, successors and assigns;

  **(c)**  find that the Notice and the Notice Plan implemented pursuant to the Settlement Agreement (1) constitute the best practicable notice under the circumstances, (2) constitute notice that is reasonably calculated, under the circumstances, to apprise members of the Settlement Classes of the pendency of the Action, their right to object to or exclude themselves from the proposed Agreement and to appear at the Final Approval Hearing, (3) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to receive notice, and (4) meet all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution and the rules of the Court;

  **(d)**  find that the Class Representatives and Settlement Class Counsel adequately represented the Settlement Classes for purposes of entering into and implementing the Agreement;

  **(e)**  dismiss the Action (including all individual claims and claims of the Settlement Classes presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

  **(f)**  incorporate the Release set forth above, make the Release effective as of the Effective Date, and forever discharge the Released Parties as set forth herein;

  **(g)**  permanently bar and enjoin all members of the Settlement Classes who have not been properly excluded from the Settlement Classes from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

  **(h)**  authorize the Parties, without further approval from the Court, to agree to

and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to this Agreement) as (1) shall be consistent in all material respects with the Final Judgment, or (b) do not limit the rights of members of the Settlement Classes;

(i)     without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

(j)     incorporate any other provisions as the Court deems necessary and just.

## 8.     CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; INCENTIVE AWARD.

8.1     Subject to the Court's approval, the Parties have agreed that Defendant shall pay to Settlement Class Counsel the sum of Seven Hundred and Fifty Thousand Dollars ($750,000.00) for attorneys' fees and costs expended in this Action, which represents twenty-five percent (25%) of the Settlement Fund.  Defendant agrees that such an amount is reasonable and will not object to, or otherwise challenge, Settlement Class Counsel's application for attorneys' fees and for reimbursement of costs and other expenses if Settlement Class Counsel's application does not exceed said amount.  Settlement Class Counsel has, in turn, agreed not to seek or accept more than this amount from the Court.

8.2     Settlement Class Counsel shall, within ten (10) business days after the date the Court enters the Final Approval, if there have been no objections to the Settlement Agreement, or within ten (10) business days after the Effective Date, be paid from the Settlement Fund the amount of attorneys' fees and expenses approved by the Court.  Any payment of attorneys' fees and expenses shall be paid via electronic transfer to an account designated by Settlement Class

Counsel providing necessary information for electronic transfer.  Settlement Class Counsel agrees that in no event shall Defendant pay or be obligated to pay in excess of $750,000.00 for Settlement Class Counsel's attorneys' fees and costs.  Should the Court award less than this amount, the difference in the amount of the Fee Award and the amount sought pursuant to this paragraph shall remain in the Settlement Fund to pay Approved Claims of members of the Settlement Classes.

      **8.3**    In addition to any award to which they may be entitled under the Settlement Agreement, and in recognition of their efforts on behalf of the Settlement Classes, the Class Representatives Juana Curry and William Moore shall, subject to the approval of the Court, each be awarded an incentive award in the amount of Five Thousand Dollars ($5,000.00).  Defendant agrees that such an amount is reasonable and that it shall not oppose such award, directly or indirectly.  This sum shall be paid in recognition of the Plaintiffs' time and effort serving as the Class Representatives in this litigation.  Defendant shall pay said amounts via check from the Settlement Fund to the Class Representatives, such checks to be sent care of Settlement Class Counsel, within ten (10) business days after the date the Court enters the Final Approval if there have been no objections to the Settlement Agreement, and, if there have been such objections, within ten (10) business days after the Effective Date.

**9.**    **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

      **9.1**    The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

      **(a)**    This Agreement has been signed by the Plaintiffs, Defendant, Settlement Class Counsel, and Defendant's Counsel;

**(b)**      The Court has entered the Preliminary Approval Order approving this Settlement Agreement, Notice and Claim Forms;

**(c)**      The Court has entered an order finally approving this Agreement in its entirety, following notice to the Settlement Classes and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment substantially consistent with this Agreement; and

**(d)**      The Final Judgment has become Final, as defined above, or, in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and that has the consent of the Parties, such Alternative Judgment becomes Final.

**9.2**      If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Settlement Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 9.3 unless Settlement Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement.  If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Settling Parties.  Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Settlement Class Counsel set forth in Paragraph 8.1 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.

**9.3**      If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1, 6.2, 9.1, or 9.2 above, the Parties shall be restored to their respective

positions in the Action as of the date of the signing of this Agreement.  In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into.

## 10.     MISCELLANEOUS PROVISIONS

**10.1**     The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement.  Settlement Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking Court approval of the Preliminary Approval Order, the Settlement Agreement, and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

**10.2**     The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs and the Settlement Classes, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.

**10.3**     The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released.  The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the

same.

**10.4** Whether or not the Effective Date occurs or this Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

        **(a)** is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by the Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the fee award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

        **(b)** is, may be deemed, or shall be used, offered or received against Defendant, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

        **(c)** is, may be deemed, or shall be used, offered or received against Plaintiffs or the Settlement Classes, or each or any of them, as an admission, concession or evidence of, the infirmity or strength of any claims raised in the Action, the truth or falsity of any fact alleged by Defendant, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

        **(d)** is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  However, the

settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement.  However, if this Settlement Agreement is approved by the Court, any party or any of the Released Parties may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against such party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

  **(e)** is, may be deemed, or shall be construed against Plaintiffs and the Settlement Classes, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

  **(f)** is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs and the Settlement Classes, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiffs' claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

  **10.5** The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

  **10.6** The waiver by one party of any breach of this Agreement by any other party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

  **10.7** All of the exhibits to this Settlement Agreement are material and integral parts

thereof and are fully incorporated herein by this reference.

**10.8**    This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein.   No representations, warranties or inducements have been made to any party concerning this Settlement Agreement or its exhibits other than the representations, warranties and covenants contained and memorialized in such documents.   This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

**10.9**    Except as otherwise provided herein, each Party shall bear its own costs.

**10.10**   It is expressly acknowledged and agreed that neither Plaintiffs nor Defendant will institute, participate in, or encourage any appeal from an order implementing this Settlement Agreement; provided, however, that Plaintiffs and Defendant have the right to appeal an order that is in any way different from the material terms of this Settlement Agreement or that materially alters the consideration to be given by or to any party.

**10.11**   To the extent that either side desires to issue a press release or press statement, they may do so, subject to the prior approval of the other party.   No press release, press statement, or public statements shall include statements disparaging either side, or statements suggesting that the Defendant has been found to have violated the law, or that the Settlement amounts to an admission of liability or damages.

**10.12**   Termination of Settlement by AvMed.   AvMed may, in its sole discretion, withdraw from and terminate this Settlement Agreement if more than 15,000 of the Settlement Class Members elect to exclude themselves (opt out) from the settlement.   Should AvMed elect

to withdraw from and terminate this settlement pursuant to this Paragraph, such withdrawal and termination shall be treated as if Final Approval was not granted under Paragraph 9.

**10.13**   Plaintiffs represent and warrant that they have not assigned any claim or right or interest therein as against the Released Parties to any other Person or party and that they are fully entitled to release the same.

**10.14**   Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any party hereto hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

**10.15**   This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement all exchange original signed counterparts.  A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

**10.16**   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

**10.17**   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

**10.18**   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

**10.19**   This Settlement Agreement is deemed to have been prepared by counsel for all

Parties, as a result of arms' length negotiations among the Parties with the aid of a neutral mediator.  Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one party than another.

**10.20**   Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel: Jay Edelson, Edelson LLC, 350 North LaSalle Street, Suite 1300, Chicago, Illinois 60654; and John Delionado of Hunton & Williams, LLP, 1111 Brickell Avenue, Suite 2500, Miami, Florida 33131.

[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK.  SIGNATURE PAGE FOLLOWS.]

To:   Page 39 of 39                    39/39        2013-10-18 21:53:27 (GMT)                         From: Thad Heckman

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

Dated: _____                 By _____
                                     Juana Curry, as an Individual and a Class
                                     Representative

Dated: _____                 By _____
                                     William Moore, as an Individual and a Class
                                     Representative

Dated: _____                 AVMED, INC.

                                     By _____

                                     Title _____

**IT IS SO STIPULATED:**

Dated: _____                 EDELSON LLC
                                     Attorneys for Plaintiff

                                     By _____
                                     Jay Edelson
                                     Ari J. Scharg
                                     Benjamin S. Thomassen

Dated: _____                 HUNTON AND WILLIAMS, LLP
                                     Attorneys for Defendant AvMed, Inc.

                                     By _____
                                     John J. Delionado
                                     Neil K. Gilman
                                     Paulo R. Lima

1/1                                                    Oct-21-2013 12:55 PM USPS - Miami, FL 305-406-1389

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be

executed, by their duly authorized attorneys.

Dated: _____          By _____
                                Juana Curry, as an Individual and a Class
                                Representative

Dated: _10/19/2013_             By _William A Moore_____
                                William Moore, as an Individual and a Class
                                Representative

Dated: _____          AVMED, INC.

                                By _____

                                Title _____

**IT IS SO STIPULATED:**

Dated: _____          EDELSON LLC
                                Attorneys for Plaintiff

                                By _____
                                Jay Edelson
                                Ari J. Scharg
                                Benjamin S. Thomassen

Dated: _____          HUNTON AND WILLIAMS, LLP
                                Attorneys for Defendant AvMed, Inc.

                                By _____
                                John J. Delionado
                                Neil K. Gilman
                                Paulo R. Lima

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

Dated: _____

By _____
Juana Curry, as an Individual and a Class Representative

Dated: _____

By _____
William Moore, as an Individual and a Class Representative

Dated: 10/21/13

AVMED, INC.

By _____

Title SVP/GC

**IT IS SO STIPULATED:**

Dated: 10/21/13

EDELSON LLC
Attorneys for Plaintiff

By _____
Jay Edelson
Ari J. Scharg
Benjamin S. Thomassen

Dated: 10/21/13

HUNTON AND WILLIAMS, LLP
Attorneys for Defendant AvMed, Inc.

By _____
John J. Delionado
Neil K. Gilman
Paulo R. Lima

## **EXHIBITS**

**Exhibit A**      **Premium Overpayment Claim Form**

**Exhibit B**      **Identity Theft Claim Form**

**Exhibit C**      **Direct Email Notice**

**Exhibit D**      **Direct Postcard Notice**

**Exhibit E**      **Website Notice**

# Exhibit A

## Curry v. AvMed, Inc., PREMIUM OVERPAYMENT CLAIM FORM

Return this Claim Form to: Claims Administrator, [address]. Questions, visit www.databreachsettlement.com or call 1-800-204-0556

**DEADLINE: THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR POSTMARKED BY [CLAIMS DEADLINE] AND MUST BE FULLY COMPLETED, BE SIGNED UNDER OATH, AND MEET ALL CONDITIONS OF THE SETTLEMENT AGREEMENT.**

**Instructions:** If you are a current or former AvMed, Inc. customer who, prior to December 2009, paid AvMed for insurance, you may be entitled to a monetary settlement payment of up to $10 for each year you made such payments for insurance (up to $30) or a lesser *pro rata* share (the actual amount of payments will be based on the number of valid claim forms submitted), in this lawsuit against AvMed , Inc. if it is finally approved by the Court.  YOU MUST SUBMIT THIS CLAIM FORM IN ORDER TO RECEIVE A SETTLEMENT PAYMENT.

Please note that if you are a Premium Overpayment Settlement Class Member, the Class Member Verification section below requires you to state, under penalty of perjury, that you paid insurance premium payments to AvMed, Inc. prior to December 2009.

Visit www.databreachsettlment.com for complete information.

| YOUR CONTACT INFORMATION |
|---|

**Name**: _____    _____    _____
  *(First)*                   *(Middle)*                      *(Last)*

**Address**: _____
  *(Street)* (You must provide a street address.  A P.O. box will not be accepted.)

_____    ___ ____    ____ ___ ____ ___ ____
  *(City)*                          *(State)*              *(Zip Code)*

**Current Phone Number: ( ___ ___ ___) ___ ___ ___ – ___ ___ ___ ___**
(Please provide a phone number where you can be reached if further information is required.)

| AvMed Insurance Purchased |
|---|

Please state the number of years or partial years for which you paid AvMed, Inc. for insurance prior to December 2009:
  **_____ years**

| Class Member Verification |
|---|

By submitting this claim form and checking the boxes below, I declare under penalty of perjury that I am a member of the Premium Overpayment Settlement Class and that the following statements are true (check each box that applies):
☐ That I made insurance premium payments to AvMed, Inc. prior to December 2009.
☐ Prior to the December 2009 Incident, I had the expectation that AvMed would protect my personal information and this was important to me in choosing AvMed.
☐ That all information provided in this Claim Form is true and correct.

The Claims Administrator may audit any and all claims.  Persons knowingly making false claims may be subject to civil or criminal penalties. **I declare under penalty of perjury that the foregoing is true and correct.**

Signature: _____    Date: _____

Print Name: _____

Your claim will be submitted to the Claims Administrator for review, if accepted you will be mailed a check for up to $30 or a lesser *pro rata* share.  This process takes time, please be patient.

**CLAIM FORMS MUST BE SUBMITTED ONLINE OR POSTMARKED NO LATER THAN [Claims Deadline] TO BE ELIGIBLE FOR PAYMENT.  FILE ONLINE AT: www.databreachsettlement.com OR MAIL THIS CLAIM FORM TO:  Claims Administrator, [Address].  If you have questions, you may call the Settlement Administrator at 1-800-204-0556 or Class Counsel at 1-866-354-3015.**

# Exhibit B

## Curry v. AvMed, Inc., IDENTITY THEFT REIMBURSEMENT CLAIM FORM

Return this Claim Form to: Claims Administrator, [address]. Questions, visit www.databreachsettlement.com or call 1-800-204-0556.

**DEADLINE: THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR POSTMARKED BY [CLAIMS DEADLINE] AND MUST BE FULLY COMPLETED, BE SIGNED UNDER OATH, AND MEET ALL CONDITIONS OF THE SETTLEMENT AGREEMENT.**

**Instructions:** If you are a current or former AvMed customer whose Sensitive Personal Information was contained on laptops stolen from AvMed in December of 2009 and you have suffered Identity Theft and incurred unreimbursed losses as a result, you may be entitled to a monetary settlement payment for up to the total amount of your unreimbursed costs resulting from the identity theft, or a lesser *pro rata* share (the actual amount of payments will be based on the number of valid claim forms submitted), in this lawsuit against AvMed, Inc. ("Defendant"), if it is finally approved by the Court. YOU MUST SUBMIT THIS CLAIM FORM IN ORDER TO RECEIVE A SETTLEMENT PAYMENT.

Please note that if you are an Identity Theft Settlement Class Member, the Class Member Verification section below requires you to state, under penalty of perjury, both that: (1) you have been a victim of identity theft between December 2009 and [claims deadline]; and (2) due to this identity theft, you have suffered actual, monetary damages, for which you have not been reimbursed, excluding any charges initiated with your authorization. With this Identity Theft Reimbursement Claim Form, you must also submit any and all documentation or records evidencing that you were a victim of identity theft and showing the specific monetary losses you incurred as a result. All claims **MUST** be submitted with documentation to be considered valid. All claims are subject to review by both Parties and final approval by the Claims Administrator.  Visit www.databreachsettlement.com for complete information.

| YOUR CONTACT INFORMATION |
|---|

**Name**: *(First)* _____   *(Middle)* _____   *(Last)*_____

**Address**: *(Street)*_____
(You must provide a street address.  A P.O. box will not be accepted.)

*(City)*_____   *(State)* ____ ____   *(Zip Code)*____ ____ ____ ____ ____

**Current Phone Number: ( ___ ___ ___) ___ ___ ___ – ___ ___ ___ ___**
(Please provide a phone number where you can be reached if further information is required.)

| Amount of Losses |
|---|

Please state the total amount of monetary losses you have suffered as a result of identity theft, excluding any charge initiated with your authorization, AND have not been reimbursed for:

$_____._____

*(Please attach all supporting documentation of the identity theft and amount of losses to this Claim Form. Claims submitted without documentation will NOT be considered valid.)*

| Class Member Verification |
|---|

By submitting this claim form and checking the boxes below, I declare under penalty of perjury that I am a member of the Identity Theft Class and that the following statements are true (check each box that applies):

☐  I purchased insurance from AvMed, Inc., and was a victim of identity theft between December 2009 and [claims deadline].

☐  As a result of this identity theft, I suffered actual monetary losses, for which I have not been reimbursed, in the amount listed above.

☐  That all information provided in this Claim Form is true and correct.

The Claims Administrator may audit any and all claims and may require the submission of supplemental information to evaluate any claims.  Persons knowingly making false claims may be subject to civil or criminal penalties. **I declare under penalty of perjury that the foregoing is true and correct.**

Signature: _____   Date: _____

Print Name: _____

Your claim will be submitted to the Claims Administrator for review, if accepted you will be mailed a check for your unreimbursed losses, or a lesser *pro rata* share.  This process takes time, please be patient.

**CLAIM FORMS MUST BE SUBMITTED ONLINE OR POSTMARKED NO LATER THAN [Claims Deadline] TO BE ELIGIBLE FOR PAYMENT. FILE ONLINE AT: www.databreachsettlement.com  OR MAIL THIS CLAIM FORM TO:  Claims Administrator, [Address].  If you have questions, you may call the Settlement Administrator at or call 1-800-204-0556 or Class Counsel at 1-866-354-3015.**

# Exhibit C

**IF YOU PAID FOR OR RECEIVED HEALTH INSURANCE FROM AVMED, INC. AT ANY TIME THROUGH DECEMBER 2009, PLEASE READ THIS NOTICE CAREFULLY BECAUSE IT COULD AFFECT YOUR RIGHTS.**

*Para una notificacion en Español, visitar www.www.databreachsettlement.com*

**COURT AUTHORIZED NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT**

A proposed class action settlement has been reached in a lawsuit regarding the December 2009 theft of two laptop computers containing the personal information of AvMed Inc.'s customers. Your legal rights may be affected by this settlement whether you act or don't act. Please read this Notice carefully. Visit www.databreachsettlement.com to read the full Notice and the Settlement Agreement and to make a claim.

**What is the Lawsuit About?**

This lawsuit concerns the theft of two laptop computers from AvMed's facilities in December 2009. The lawsuit claims that before December 2009, AvMed failed to adequately safeguard its customers' personal information, which exposed them to harm.

AvMed denies it violated any law, and claims that it did adequately safeguard its customers' personal information and that its customers did not suffer any actual harm from its actions. The Court has not determined who is right. Rather, the parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation. AvMed promises to vigorously defend the lawsuit if the proposed settlement is not approved by the Court.

**How Do I Know if I am a Class Member?**

There are two groups, or "Classes," in the Settlement.

The Court decided that everyone who fits this description is a member of the **Premium Overpayment Settlement Class**: all current and former AvMed customers who, prior to December 2009, paid AvMed for insurance, and whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident

The Court decided that everyone who fits this description is a member of the **Identity Theft Settlement Class**: All current and former AvMed customers whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident, and who suffered Identity Theft and incurred unreimbursed losses as a result.

**What Can I Get From the Settlement?**

If you are a Member of the Premium Overpayment Settlement Class and the Court approves the Settlement, and if you meet certain requirements you may be entitled to receive up to $30 ($10 per year for each year that you were an AvMed customer, up to three years). If you are an Identity Theft Settlement Class Member, the amount you are entitled to will be calculated by the Claims Administrator on a case-by-case basis. You may be reimbursed for all actual unrecovered losses resulting from the identity theft, subject to the submission of documented proof and the approval of the Claims Administrator. If the expenses, fees, incentive award and claims exceed the $3 million Settlement Fund created by the Defendant, members of these classes may receive a lesser *pro rata* share.

The Settlement Agreement available at www.databreachsettlement.com describes the details of the settlement. Only those Members of the Settlement Classes who submit valid approved claims will receive a payment.

**How Do I Submit a Claim for Payment?**

To qualify for a payment under the settlement, you must submit a timely and properly completed Claim Form for the class of which you are a member. You may submit either Claim Form online at www.databreachsettlement.com, no later than [claims deadline] by following the instructions found through the link, or you may mail a completed Claim Form, **postmarked no later than [claims deadline]** to *Curry v. AvMed* Settlement Administrator, [address]. Only those claims that meet the requirements of the Settlement Agreement will be eligible for a payment.

**What are My Other Options?**

If you fall within the description of the Premium Overpayment Settlement Class and/or Identify Theft Settlement Class, you will be a member of either or both of such Classes unless you exclude yourself from the settlement. If you do not wish to be a member of either Settlement Class, you may exclude yourself by sending a letter to the settlement administrator no later than **[objection/exclusion deadline]**. You must include your name and address, signature, and a statement that you wish to be excluded from either or both Settlement Classes in *Curry v. AvMed Inc.*, No. 10-cv-24513. If you choose to exclude yourself, you give up your right to any settlement payment or to object to the settlement, but retain any rights you may currently have to sue the Defendant over the issues in the lawsuit.

You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Objecting is telling the Court you don't like something about the settlement. You can object ONLY if you stay in a Settlement Class and don't exclude yourself. Your written objection must be filed with the Court and sent to the attorneys for all parties to the lawsuit no later than **[objection/exclusion deadline]**. Specific instructions about how to object to, or exclude yourself from, the settlement are available at www.databreachsettlement.com.

If you do nothing you will be in the Premium Overpayment and/or Identity Theft Settlement Class, and if the Court approves the Settlement, you will also be bound by all orders and judgments of the Court. If the Court approves the Settlement, your claims relating to the December 2009 laptop thefts from AvMed's facilities will be fully and finally resolved and released. However, you need to timely submit a valid Claim Form to make a claim for a payment.

**Who Represents Me?**

The Court has appointed Jay Edelson, Ari Scharg, and Ben Thomassen from Edelson LLC to represent the class. These attorneys are referred to as Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?**

The Court will hold the Final Approval Hearing to determine the fairness of the settlement at [time] on [date] at the James Lawrence King Federal Justice Building, Room 1127, 99 Northeast Fourth Street, Miami, FL 33132. At that hearing, the Court will hear any objections concerning the fairness of the settlement that have been properly raised, as set forth above. The hearing may be postponed to a different date or time without notice. You are not required to come to this hearing.

At the Final Approval Hearing, Class Counsel will ask the Court for $750,000 from the Settlement Fund for attorneys' fees and for actual costs of investigating the facts, litigating the case, and negotiating the settlement. The Court may award less than this amount. Class Counsel will post their fee petition and itemization of actual costs on the settlement website by [date].

The Court has also appointed two Class Representatives, who will each seek an incentive award of $5,000 (an amount the Defendant does not oppose) from the Settlement Fund for their services throughout this case. The Court may award less than this amount.

**How Do I Get More Information?**

This Notice is intended only as a summary of the lawsuit and proposed settlement. It is not a complete statement of the lawsuit or the proposed settlement. For more information about the proposed settlement and a copy of the full Notice and Claim Forms, go to www.databreachsettlement.com, contact the settlement administrator at *1-800-204-0556* or *Curry v. AvMed* Settlement Administrator, [address], or call Class Counsel at 1-866-354-3015.

By Order of the Court Dated: [date]

# Exhibit D

COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT

**IF YOU PAID FOR OR
RECEIVED HEALTH
INSURANCE FROM AVMED,
INC. AT ANY TIME
THROUGH DECEMBER
2009, PLEASE READ THIS
NOTICE CAREFULLY
BECAUSE IT COULD
AFFECT YOUR RIGHTS.**

*Para una notificacion en Español,
visitarwww.databreachsettlement.com*

AvMed Data Breach Settlement
Settlement Administrator
P.O. Box 0000
Providence, RI 00000-0000

First-Class
Mail
US Postage
Paid
Permit #___

|||||||||||||||||||||||||
Postal Service: Please do not mark barcode

XXX—«ClaimID»      «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

By Order of the Court Dated: [date]

A proposed class action settlement has been reached in a lawsuit regarding the December 2009 theft of two laptop computers containing the personal information of AvMed Inc.'s customers. The lawsuit claims that before the theft, AvMed (the "Defendant") failed to adequately safeguard its customers' personal information, which exposed them to harm. The Defendant vigorously denies they violated any law, and claims that it adequately safeguarded its customers' personal information and its customers did not suffer any actual harm from its actions, but has agreed to the settlement to avoid the uncertainties and expenses associated with continuing the case.

**Am I a Class Member?** There are two groups, or "Classes," in the Settlement. The Court decided that everyone who fits this description is a member of the **Premium Overpayment Settlement Class**: all current and former AvMed customers who, prior to December 2009, paid AvMed for insurance, and whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident. The Court decided that everyone who fits this description is a member of the **Identity Theft Settlement Class**: All current and former AvMed customers whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident, and who suffered Identity Theft and incurred unreimbursed losses as a result.

**What Can I Get?** If approved by the Court, Premium Overpayment Settlement Class Members who meet certain requirements can receive up to $30 ($10 per year for each year that they were an AvMed customer, up to three years). Identity Theft Settlement Class Members can receive reimbursement for all actual unrecovered losses resulting from the identity theft, subject to the submission of documented proof and the approval of the Claims Administrator, which will be calculated by the Claims Administrator on a case-by-case basis. Defendant has also agreed to put certain practices and policies in place to bolster its data security.   If the expenses, fees, incentive award and claims exceed the $3 million Settlement Fund created by the Defendant, members of these classes may receive a lesser *pro rata* share.

**How Do I Get a Payment?** You must submit one, or both, timely and properly completed Claim Forms signed under penalty of perjury **no later than** [claims deadline]. You may access, complete, and submit one or both Claim Forms online at www.databreachsettlement.com.

**What are My Other Options?** You may exclude yourself from the Settlement Classes by sending a letter to the settlement administrator no later than [deadline]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed no later than [deadline]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at www.databreachsettlement.com. If you file a claim or do nothing, and the Court approves the settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged negligence in this case against the Defendant will be fully and finally resolved and released.

**Who Represents Me?** The Court has appointed lawyers from Edelson LLC to represent the class. These attorneys are called Class Counsel and you will not be charged for these lawyers, but you may hire an attorney to represent you at your own expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at _____.m. on _____ at the Lawrence King Federal Justice Building, Courtroom 1127, 99 Northeast Fourth Street, Miami, Florida 33132. At that hearing, the Court will hear any objections, determine the fairness of the settlement, decide whether to approve Class Counsel's request for attorneys' fees and expenses of up to 25% of the Settlement Fund; and decide whether to award the Class Representatives $5,000 each from the Fund for their services throughout this case. The Court may award less than these amounts.

**How Do I Get More Information?** For more information, including the full Notice, Claim Forms and Settlement Agreement go to www.databreachsettlement.com, contact the settlement administrator at 1-800-204-0556, or call Class Counsel at 1-866-354-3015.

# Exhibit E

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
*Curry v. AvMed, Inc.*, Case No. 10-cv-24513

## If You Paid for or Received Insurance from AvMed, Inc. at Any Time Through December of 2009, You May Be Part of a Class Action Settlement.

IMPORTANT: PLEASE READ THIS NOTICE CAREFULLY.
THIS NOTICE RELATES TO THE PENDENCY OF A CLASS ACTION LAWSUIT
AND, IF YOU ARE A MEMBER OF THE SETTLEMENT CLASSES, CONTAINS
IMPORTANT INFORMATION ABOUT YOUR RIGHTS TO MAKE A CLAIM UNDER THE
SETTLEMENT OR TO OBJECT TO THE SETTLEMENT

(*A federal court authorized this notice. It is <u>not</u> a solicitation from a lawyer.*)

Your legal rights are affected whether or not you act.  Please <u>read this notice carefully</u>.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to receive a payment. |
| **EXCLUDE YOURSELF** | You will receive no benefits, but you will retain any rights you currently have to sue the Defendant about the claims in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **GO TO THE HEARING** | Ask to speak in Court about your opinion of the Settlement. |
| **DO NOTHING** | You won't get a share of the Settlement benefits and will give up your rights to sue the Defendant about the claims in this case. |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

## BASIC INFORMATION

| **1.  Why was this Notice issued?** |
|---|

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

Judge James King, of the U.S. District Court for the Southern District of Florida, is overseeing this case. The case is known as *Curry v. AvMed, Inc.*, No. 10-cv-24513. The persons who sued are called the Plaintiffs. The Defendant is AvMed, Inc.

| **2. What is a Class Action?** |
|---|

In a class action, one or more people called class representatives (in this case, Juana Curry and William Moore) sue on behalf of a group or a "class" of people who have similar claims. In a class action, the court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

| **3. What is this Lawsuit about?** |
|---|

This lawsuit claims that in December of 2009, unsecured laptops containing the sensitive personal information of AvMed customers were stolen while they were in the Defendant's custody.  The lawsuit claims that, by failing to adequately secure and encrypt the laptops, Defendant was negligent and failed to discharge its obligation to protect the sensitive personal information of its customers. A more complete description of the allegations is available on the Settlement Website at www.databreachsettlement.com.

Defendant AvMed, Inc. denies any wrongdoing, and further states that it complied with and provided all data security obligations to its customers, and that its customers did not suffer any actual harm. The Court has not determined who is right.  Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

The Agreement has already received preliminarily approval from the Court on [date]. Nevertheless, the settlement of a class action determines the rights of all members of the proposed class, and as such, the Court has ordered this notice of the Agreement to be disseminated to the Settlement Classes.  The Court will also hold a Fairness Hearing in order to determine whether final approval may be granted to the Settlement, before it can take effect.

At this point, the Court has conditionally certified two Classes for settlement purposes, so that the Members of such Classes can be given this notice and the opportunity to exclude themselves if they wish, voice their support or opposition to the Settlement, and also to explain how those who do not exclude themselves may submit a Claim Form to get the monetary benefit offered by the Settlement. If the Settlement is not granted final approval by the Court, or the Parties terminate it, the Settlement will be void, and the lawsuit will continue as if there had been no settlement and no certification of the Classes.

**4. What type of information was allegedly stolen?**

The lawsuit claims that the following customer information was contained on the stolen AvMed laptops:

- Names
- Addresses
- Phone numbers
- Social Security numbers
- Medical History
- Prescription Records
- Medical Diagnoses and Medical Treatment History

**5. Why is there a Settlement?**

The Court has not decided in favor of either side in the case. The Defendant denies all allegations of wrongdoing or liability against it and asserts that its conduct was lawful. The Defendant is settling to avoid the expense, inconvenience, and inherent risk and disruption of litigation. Plaintiffs and their attorneys believe that the settlement is in the best interests of Members of both Classes because it provides an appropriate recovery now, while avoiding the risk, expense, and delay of pursuing the case through trial and any appeals that could further delay any recovery for Members of the Classes.

## WHO'S INCLUDED IN THE SETTLEMENT?

**6. How do I know if I am a member of either or both Settlement Classes?**

There are two groups, or "Classes," in the Settlement.

The Court decided that everyone who fits this description is a member of the **Premium Overpayment Settlement Class**:  All current and former AvMed customers who, prior to December 2009, paid AvMed for insurance, and whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident.

The Court decided that everyone who fits this description is a member of the **Identity Theft Settlement Class**: All current and former AvMed customers who Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident, and who suffered Identity Theft and incurred unreimbursed losses as a result.

For a more detailed explanation of the Settlement Classes, please see the Settlement Agreement, which is available at www.databreachsettlement.com.

## THE SETTLEMENT BENEFITS

**7. What does the Settlement provide?**

Defendant has created a Settlement Fund totaling $3 million. The cost to administer the Settlement, as well as attorneys' fees and payments to the Class Representatives will come out of these funds (*see* Question 14).   The amount remaining after deducting these costs will be paid to eligible

Members of the Premium Overpayment Settlement Class and Identity Theft Settlement Class who submit valid claims.

In addition to creating a $3 million Settlement Fund, AvMed has or will have implemented the following   practices and/or policies regarding the security of its members' information: (1) a mandatory security awareness and training program for all company employees; (2) mandatory training on appropriate laptop use and security for all company employees whose employment responsibilities include accessing information stored on company laptop computers; (3) upgrade all company laptop computers with additional security mechanisms, including GPS tracking technology; (4) new password protocols and full disk encryption technology on all company desktop and laptop so that electronic data stored on such devices would be encrypted at rest; (5) physical security upgrades at company facilities and offices to further safeguard workstations from theft; (6) the review and revision of written policies and procedures to enhance information security.

| **8. How much will my payment be?** |
|---|

If you are member of the **Premium Overpayment Settlement Class**, and the Court gives final approval to the Settlement, and if you meet certain requirements you may be entitled to receive up to $10 for each year or partial year for which you paid for insurance from AvMed, Inc. (up to a maximum of $30).  However, the amount of your exact payment cannot be calculated at this time because your payment will depend on the total number of valid claims that are filed.  The Premium Overpayment Settlement Class includes approximately 465,000 Members.  Your payment may be reduced, on a *pro rata* basis if the claims exceed the amount allocated to the Settlement Fund.

If you are a member of the **Identity Theft Settlement Class**, the amount you are entitled to will be calculated by the Claims Administrator on a case-by-case basis. You may be reimbursed for all actual unrecovered losses resulting from the identity theft, subject to the submission of documented proof and the approval of the Claims Administrator. Your payment may be reduced, on a *pro rata* basis if the claims exceed the amount allocated to the Settlement Fund.

| **9. When will I get my payment?** |
|---|

You should receive a check from the settlement administrator within 60-90 days after the Settlement has been finally approved and/or after any appeals have been resolved in favor of the Settlement. The hearing to consider the final fairness of the Settlement is scheduled for [Fairness Hearing Date.] All checks will expire and become void 90 days after they are issued.

## HOW TO GET BENEFITS

| **10. How do I get benefits?** |
|---|

If you are a member of either or both Settlement Classes and you want to participate in the Settlement, you must complete and submit a truthful Claim Form, signed under penalty of perjury, by **[claims Deadline]**.   The Claim Forms for both Settlement Classes can be found at www.databreachsettlement.com or by calling, toll free, 1-800-204-0556.  A Claim Form can be submitted online at the website or mailed to the Settlement Administrator. Only Premium Overpayment Class Members can submit a Premium Overpayment Claim Form, and only Identity Theft Class Members may submit an Identity Theft Claim Form.  Those persons who submit an Identity Theft Claim Form must also submit documented proof of their losses, such as police reports,

correspondence with governmental agencies, correspondence with financial institutions or credit card companies, and/or banking, brokerage, or credit card records that demonstrate that any identity theft and losses were more than likely caused by the December 2009 Incident.  It is possible you may be a member of both Classes, and may submit both Claim Forms only if you meet the criteria for membership in both Classes.

Members of both Settlement Classes are able to and encouraged to submit their Claim Forms and documented proof of identity theft and unreimbursed losses online.  Not only is it easier and more secure, it is completely free and takes only minutes!

## REMAINING IN THE SETTLEMENT

### 11. What am I giving up if I remain a Member of either Class?

If the Settlement becomes final, you will give up your right to sue the Defendant for the claims being resolved by this Settlement.  The specific claims you are giving up against the Defendant are described in Section 3 of the Settlement Agreement.  You will be "releasing" the Defendant and all related people as described in Section 3 of the Settlement Agreement. Unless you exclude yourself (*see* Question 15), you are "releasing" the claims, regardless of whether you submit a claim or not. The Settlement Agreement is available at www.databreachsettlement.com.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully.  If you have any questions you can talk to Class Counsel listed in Question 13 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

### 12. What happens if I do nothing at all?

If you do nothing and fall within the description of either or both Classes, you will be included in the Premium Overpayment and/or Identity Theft Settlement Classes but will not receive any benefits from this Settlement.  But, unless you exclude yourself (*see* Question 15), you won't be able to start a lawsuit or be part of any other lawsuit against the Defendant for the claims being resolved by this Settlement.

## THE LAWYERS REPRESENTING YOU

### 13. Do I have a lawyer in the case?

The Court has appointed Jay Edelson, Ari J. Scharg, and Benjamin S. Thomassen of Edelson LLC to be the attorneys representing the Settlement Classes.  They are called "Class Counsel."  They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Classes.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer in this case, you may hire one at your expense.

### 14. How will the lawyers be paid?

Subject to Court approval, Defendant has agreed to pay Class Counsel up to 25% of the Settlement Fund for attorneys' fees and expenses for investigating the facts, litigating the case, and negotiating

the Settlement in this matter.  The Court may award less than this amount.  Under the Settlement Agreement, any amount awarded to Class Counsel will be paid out of the Settlement Fund.

Subject to approval by the Court, Defendant has agreed to pay $5,000 to each of the Class Representatives from the Settlement Fund for their services in helping to settle this case.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 15. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a letter (or request for exclusion) by mail stating that <u>you want to be excluded</u> from *Curry v. AvMed, Inc.*, No. 10-cv-24513.  Your letter or request for exclusion must also include your name and address, a signature, the name and number of the case, and a statement that you wish to be excluded from the Premium Overpayment Settlement Class and/or Identity Theft Settlement Class. You must mail your exclusion request no later than **Month 00, 2014**, to:

> AvMed Settlement
> P.O. Box 0000
> City, ST 00000

### 16. If I don't exclude myself, can I sue the Defendant for the same thing later?

No.  Unless you exclude yourself, you give up any right to sue the Defendant for the claims being resolved by this Settlement.

### 17. If I exclude myself, can I get anything from this Settlement?

No.  If you exclude yourself, do not submit either Claim Form to ask for benefits.

## OBJECTING TO THE SETTLEMENT

### 18. How do I object to the Settlement?

If you're a member of either Settlement Class, you can object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it and the Court will consider your views.  To object, you must send a letter stating that you object to the Settlement in *Curry v. AvMed, Inc.*, No. 10-cv-24513. Your letter or brief must also include your name and address, your signature, and all arguments, citations, and evidence supporting the objection (including copies of any documents relied on), a statement that you are a member of the Premium Overpayment Settlement Class and/or the Identity Theft Settlement Class and a statement indicating whether you intend to appear at the Final Approval Hearing with or without counsel.

Class Counsel will file with the Court and post on this website its request for attorneys' fees two weeks prior to the objection deadline.

If you want to appear and speak at the Final Approval Hearing to object to the Settlement, with or without a lawyer (explained below in answer to Question Number 22), you must say so in your letter or brief.  Mail the objection to these three different places postmarked no later than **Month 00, 2014**:

| Court | Class Counsel | Defense Counsel |

| The Honorable James King<br>c/o Clerk of the Court<br>Federal Justice Building<br>99 NE Fourth St.<br>Miami, FL 33132 | Ari J. Scharg<br>Edelson LLC<br>350 North LaSalle St,<br>Suite 1300<br>Chicago, Illinois 60654 | John Delionado<br>Hunton and Williams, LLP<br>1111 Brickell Avenue,<br>Suite 2500<br>Miami, FL 33131 |
|---|---|---|

## 19. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Classes. Excluding yourself from the Classes is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

## 20. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Fairness Hearing at [time] on **Month 00, 2014** in Courtroom 1127 of the James Lawrence King Federal Justice Building, 99 Northeast Fourth Street, Miami, Florida 33132. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Classes; to consider the Parties' agreement that Class Counsel should be paid 25% of the Settlement Funds for attorneys' fees and expenses; and to consider the request for an incentive award to Class Representatives in the total amount of $10,000. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check www.databreachsettlment.com or call 1-800-204-0556 . If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Fairness Hearing, you will receive notice of any change in the date of such Fairness Hearing.

## 21. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

## 22. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear in *Curry v. AvMed, Inc.*, No. 10-cv-24513." It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you. Your Notice of Intent to Appear must be postmarked no later than **Month 00, 2014**, and be sent to the addresses listed in Question 18. You must also state in your objection that you plan on appearing at the hearing.

## GETTING MORE INFORMATION

| 23. Where do I get more information? |
| --- |

This Notice summarizes the Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.databreachsettlement.com. You may also write with questions to AvMed Settlement, P.O. Box 0000, City, ST 00000. You can call the Settlement Administrator at 1-800-204-0556 or Class Counsel at 1-866-354-3015, if you have any questions. Before doing so, however, please read this full Notice carefully.  You may also find additional information elsewhere on the Settlement website.