**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 10-cv-24513-JLK**

JUANA CURRY and WILLIAM MOORE,
individually and on behalf of a class of
similarly situated individuals,

      Plaintiffs,

          v.

AVMED, INC., d/b/a/ AvMed, a Florida
Corporation,

      Defendant.

[Hon. James Lawrence King]

**PLAINTIFFS' MOTION FOR REASONABLE
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

**Respectfully submitted by:**

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edeslon.com
Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
Benjamin S. Thomassen (Admitted *Pro Hac Vice*)
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6380
Fax: 312.589.6378

Edmund A. Normand (No. 865590)
Diego M. Madrigal, III (No. 0037643)
WOOTEN, KIMBROUGH, & NORMAND, P.A.
236 S. Lucerne Circle
Orlando, Florida 32801
Tel.: 407.843.7060
Fax: 407.843.5836

*Attorneys for Plaintiffs and the Classes*

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  BACKGROUND ..................................................................................................2

    A.  Plaintiff's Allegations and the Litigation History ................................2

    B.  The Parties' Settlement Efforts and Negotiations.................................4

    C.  The Settlement Achieves Exceptional Relief for the Settlement Classes ..........5

III.  THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES OF $750,000 BECAUSE THEY ARE REASONABLE .......7

    A.  Class Counsel Exerted a Great Deal of Time and Effort in This Case and Were Consequently Precluded from Accepting Other Employment...........................................................................................9

    B.  The Case Involved Difficult Issues of First Impression and the Risk of Nonpayment and Not Prevailing on the Claims Was High ........................10

    C.  Class Counsel Achieved an Excellent Result for the Classes ...........................12

    D.  The Requested Fee is Consistent With Those Awarded in Other Similarly Complex Class Settlements in This Circuit ......................................14

    E.  A High Level of Skill Was Required to Perform the Legal Services Properly ...............................................................................................14

IV.  THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFFS SHOULD BE APPROVED ..................................................................................................15

V.  CONCLUSION ..................................................................................................17

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)................................................................8

*Hall v. Cole*, 412 U.S. 1 (1973) ......................................................................................14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .....................................................................7

**United States Court of Appeals Cases**

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).............7, 8, 9

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011) ..............................8

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)....................8

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*
      540 F.2d 102 (3d Cir. 1976)...............................................................................12

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) .....................................11

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012)..............................................4

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ................8, 14

*Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530 (11th Cir. 1983) ...............................10

**United States District Court Cases**

*Allapattah Serv., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) .........12, 14, 16

*Beringer v. Certegy Check Services, Inc.,* No. 07-cv-01657 (M.D. Fla.).....................13

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa 1985).......................................16

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................7

*David v. Am. Suzuki Motor Corp.*,
      No. 08-cv-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010)......................16

*Francisco v. Numismatic Guaranty Corp. of Am.*,
      No. 06-cv-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)........................11

*Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262 (N.D. Ill. 2013)..................15

*Hendricks v. DSW Shoe Warehouse Inc.,* 444 F. Supp. 2d 775 (W.D. Mich. 2006) ....................12

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............... *passim*

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ..........16

*In re Facebook Privacy Litig.*, No. 10-cv-02389 (N.D. Cal.) ........................................................15

*In re Hannaford Bros. Customer Data Sec. Breach Litig.*,
   No. 09-MDL-2046, 851 F. Supp. 2d 1040 (S.D. Tex. 2012)...........................................11

*In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig.*,
   613 F. Supp. 2d 108 (D. Me. 2009) ..............................................................................12

*In re Netflix Privacy Litig.*, No. 11-cv-00379 (N.D. Cal.) ..........................................................15

*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001)..........................................11, 15

*Johansson-Dohrmann v. Cbr Sys., Inc.,*
   No. 12-cv-1115, 2013 WL 3864341 (S.D. Cal. July 24, 2013)..................................13, 17

*Key v. DSW Inc.*, 454 F. Supp. 2d 684 (S.D. Ohio 2006) ...........................................................12

*McLoughlin v. People's United Bank,*
   08-cv-00944, 2009 WL 2843269 (D. Conn. Aug. 31, 2009)...........................................11

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...............8, 11, 14, 16

*Ponder v. Pfizer*, 522 F. Supp. 2d 793 (M.D. La. 2007).............................................................11

*Rowe v. Unicare Life and Health Ins. Co.*,
   No. 09-cv-02286 (Dkt. 46) (N.D. Ill. Sept. 14, 2011) ....................................................13

*Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704 (D. Colo. 2007)..........................................10

*Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .........8, 14

**Rules and Statutes**

Federal Rule of Civil Procedure 23 ...........................................................................................7

**Other**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ...................................8

In accordance with this Court's October 25, 2013 Order Granting Preliminary Approval of to the Action Settlement (dkt. 82), and pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs Juana Curry and William Moore ("Plaintiffs") respectfully request the Court grant their Motion for Reasonable Attorneys' Fees, Expenses, and Incentive Awards, and in support state as follows:[1]

## I.  INTRODUCTION

Plaintiffs' request for attorneys' fees and incentive awards is made pursuant to the settlement of this class action lawsuit, which arises from a data breach at Defendant AvMed, Inc.'s ("Defendant" or "AvMed") corporate headquarters wherein laptops containing the names, addresses, Social Security numbers, and medical health information of its 1.2 million customers were stolen.  (*See* Second Amended Complaint ["Compl."], Dkt. 31.)  As a result of the exposure of this highly sensitive data, Plaintiffs brought the instant action to recover damages resulting from instances of identity theft related to the breach and overpayments made to Defendant for the cost of insurance coverage, which included unrealized assurances that their private information would remain protected.

On October 25, 2013, the Court granted preliminary approval to the Settlement—reached by Class Counsel though multiple days of mediation after three years of contentious litigation and an Eleventh Circuit Appeal on an issue of first impression—that provides substantial and groundbreaking relief to the Settlement Classes.  (The Parties' Settlement Agreement is attached hereto as Exhibit 1.)  That Settlement not only creates a $3,000,000 Settlement Fund to provide

---

[1]  Pursuant to Rule 23(h) Class Counsel are filing this motion in advance of the January 30, 2014 deadline for objecting to the Settlement.  Upon filing, a copy of this motion will be posted to the settlement website, www.databreachsettlement.com, where it can easily be accessed by members of the Classes.

monetary relief to both the members of the Premium Overpayment Settlement Class (*i.e.*, customers that have paid Defendant for insurance) and Identity Theft Settlement Class (*i.e.*, those that have suffered identity theft caused by the data breach), but also requires Defendant to implement a series of procedures and protocols to secure the Settlement Classes' private information going forward.

In light of the exceptional benefits afforded to the Classes under the terms of the Settlement, Class Counsel requests the Court to approve the agreed-upon $750,000 (inclusive of expenses) for attorneys' fees, which represents 25% of the Settlement Fund, and the agreed-upon incentive awards in the amount of $5,000 to each Plaintiff, both of which are comparable to those typically awarded in similarly complex litigation. Accordingly, Class Counsel's fee request and Plaintiffs' incentive awards should be approved.

## II.      BACKGROUND

### A.      Plaintiffs' Allegations and the Litigation History.

Plaintiffs allege that on December 10, 2009, two laptop computers containing scores of AvMed members' names, addresses, telephone numbers, Social Security numbers, medical diagnosis information, and other private health information, were stolen from a conference room at Defendant's headquarters. (Compl. ¶ 2.) Plaintiffs further allege that despite the sensitive nature of the information, Defendant failed to encrypt the data contained on the stolen computers making it easily accessible, readable, and digitally transferable by the thieves. (*Id.* ¶¶ 24, 35.)

After learning that their sensitive personal and health information had been exposed through this data breach, Jean Resnick joined with several other AvMed members[2] in filing a

---

[2]      The former Plaintiffs joining Resnick's original complaint were Miguel Vasquez, Christopher Atkinson, Rochel Albertson, and Kirsten Atkinson.

class action in Florida's Circuit Court of the Eleventh Judicial Circuit on November 16, 2010

seeking damages and injunctive relief against Defendant for failing to properly safeguard their

personal health information in accordance with the Health Insurance Portability and

Accountability Act, 45 C.F.R. § 164.302, *et seq.* ("HIPAA").  On December 17, 2010, Defendant

removed the action to this Court and simultaneously moved to dismiss the state court complaint.

(Dkts. 1, 3.)

      In lieu of responding to Defendant's motion to dismiss the state court pleading, on

January 14, 2011, Plaintiffs amended the Complaint providing additional detail about

Defendant's allegedly insufficient security protocols that resulted in the data breach.  (Dkt. 15.)

Ms. Curry was also added as a Plaintiff and made allegations regarding the instances of identity

theft she suffered which included having accounts opened in her name, purchases made with her

credit card, and having her addresses changed with the Postal Service.  (*Id*. ¶¶ 46-54.)  In

addition, the First Amended Complaint included a count for unjust enrichment seeking partial

refunds of monthly premiums, a portion of which should have been allocated to AvMed's

promised, but unimplemented, data security efforts.  (*Id.* ¶¶ 109-114.)

      On February 18, 2011, Defendant moved to dismiss the First Amended Complaint.  (Dkt.

23).  After full briefing the Court granted Defendant's motion, with leave to re-plead,

determining that plaintiffs' allegations of harm were too speculative and therefore failed to state

any cognizable injury with regards to any of the several pleaded causes of action.  (Dkts. 24, 30.)

On April 25, 2011, Plaintiffs filed their Second Amended Complaint (the "Complaint"), which

retained only Plaintiff Curry and added Plaintiff Moore as well as additional factual allegations

connecting the theft of Plaintiffs' identities to the exposure of the private information contained

on the AvMed stolen laptops.  (Compl. ¶¶ 67-74.)  Defendant again moved to dismiss, and after

full briefing the Court dismissed the Complaint with prejudice, holding Plaintiffs' renewed efforts still failed to present a cognizable injury.  (Dkts. 33, 35, 37, 39.)  Believing in the merits of their claims and theory of damages, Plaintiffs appealed.

The Eleventh Circuit affirmed in part and reversed in part.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012).  The court noted the case involved an issue of first impression and found: (1) that Plaintiffs' allegations conferred Article III standing; (2) that Plaintiffs had established a plausible causal connection between the data breach and their instances of identity theft making their alleged injuries non-speculative; and (3) that Plaintiffs allegations that the insurance premiums they paid to Defendant were in part to fund the administrative costs of data security, and that Defendant's subsequent failure to implement that security barred it from equitably retaining the full amounts received, were sufficient to state a claim for unjust enrichment.  *Id.* at 1323-28.  The case was remanded back to this Court for further proceedings on October 9, 2012.  (Dkt. 50.)

On October 26, 2012, AvMed answered the Second Amended Complaint and simultaneously filed a Motion to Strike Class Allegations.  (Dkts. 51, 52.)  Plaintiffs promptly opposed the Motion to Strike, which the Court denied as premature on November 15, 2012. (Dkts. 57, 58.)  With the case open and moving forward, the Parties then engaged in their scheduling conference pursuant to Rule 26(f).  Thereafter, Plaintiffs propounded interrogatories and requests for the production of documents, and began to exchange documents and information with AvMed.

### B.    The Parties' Settlement Efforts and Negotiations.

As the Parties moved forward with discovery, they also began speaking about possible avenues for resolution and eventually decided to see if a settlement could be reached through

private mediation.  (Dkts. 68-69, 72-73; *see also* Declaration of Ari J. Scharg ¶ 4, ["Scharg Decl."], attached as Exhibit 2.)  On January 18, 2013, the Parties held their first in-person mediation with Rodney A. Max of the Upchurch Watson White & Max Mediation Group in Miami, Florida.  (Scharg Decl. ¶ 5.)  Although the Parties were able to make progress, at the end of the day, they were unable to reach an accord on certain components of the settlement structure.  (*Id.*)  Over the next several months, the Parties continued their settlement discussions, and with the assistance of Mr. Max, engaged in further arm's-length telephonic mediation sessions.  (*Id.* ¶ 6.)  On April 11, 2013, the Parties engaged in a second in-person mediation at the suggestion of Mr. Max.  (*Id.* ¶ 7.)  This time the Parties made substantial progress towards settlement, including an agreement on most key terms, but the Parties were still unable to principally agree on all terms.  (*Id.*)

Finally, on May 19, 2013, the Parties reached an agreement on the principal terms of a settlement with the assistance of Mr. Max, which they memorialized in a Memorandum of Understanding.  (*Id.* ¶ 8.)  Class Counsel insisted that any negotiations about attorneys' fees occur after relief to the Classes was agreed upon and in fact only began such negotiations, with the assistance of Mr. Max, after an agreement in principal as to relief to the Classes was reached.  (*Id.* ¶ 9.)  On October 21, 2013 the Settlement was executed and Plaintiffs moved for Preliminary Approval.  (Dkt. 77.)

**C.    The Settlement Achieves Exceptional Relief for the Settlement Classes.**

As a result of the Settlement, AvMed has agreed to create a Settlement Fund in the amount of $3,000,000 that provides two types of monetary relief.  First, members of the Premium Overpayment Settlement Class can make claims for $10.00 for each year, up to three

years, that they made payments to AvMed.  (Agreement §§ 1.33, 1.45, 2.1(a).)[3]  For those

members of the Identity Theft Settlement Class, they can make claims to recover *any*

unreimbursed monetary loss suffered as a result of the data breach.  (*Id.* §§ 1.45, 1.18, 2.1(b).)

In addition to the cash payments afforded the two classes, the Settlement also requires

AvMed to implement a wide-range of prospective measures to ensure that its customers'

personal and medical information is protected, including: (1) instituting mandatory security

awareness and training programs for all company employees; (2) instituting mandatory training

on appropriate laptop use and security for all company employees whose employment

responsibilities include accessing information stored on company laptop computers; (3)

upgrading all company laptop computers with additional security mechanisms, including GPS

tracking technology; (4) adopting new password protocols and full disk encryption technology

on all company desktops and laptops; and (5) installing physical security upgrades at company

facilities and offices to further safeguard workstations from theft.  These security protocols will

bring AvMed into compliance with HIPAA, and will help to prevent future exposure of the

Classes' private personal and medical data.  (*See* Dkt. 81.)

Finally, the Settlement Fund created by AvMed has been used to effectuate the multi-part

notice plan informing the Classes of the Settlement.  Notice included the sending of direct notice

via email to all persons who are potential members of the Settlement Classes and whose email

addresses are located in AvMed's database.  (Agreement § 4.2(a), (c); Exs. 1-A, 1-B,1- C, and 1-

E.)  For those potential members whose email addresses were not contained in AvMed's

---

[3]     These cash payments that provide reimbursement for the portion of their insurance
premiums that Defendant should have allocated to data protection and security is a novel a
benefit in a data breach case, where the typical relief is enrollment in a credit-monitoring
program.

database, the Settlement Administrator sent postcard notice via First Class U.S. Mail. (Agreement § 4.2(b), Ex. D.)  Both the emails and the postcards directed the class members to www.databreachsettlement.com, which provides the detailed Court-approved description of the settlement, access to relevant court documents, and allows for the electronic submission of claim forms.  To date, the reaction of the Classes has been overwhelmingly positive.

**III.    THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES OF $750,000 BECAUSE THEY ARE REASONABLE**

Federal Rule of Civil Procedure 23(h) authorizes, pursuant to law or the Parties' agreement, the award of reasonable attorneys' fees to class counsel who prosecute the case.  Fed. R. Civ. P. 23(h).  Not only does the Settlement here provide for the award of reasonable attorneys' fees from the Settlement Fund (Agreement § 8.1-8.2), but "[i]t is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011); *see also Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").  While this Court of course has discretion to determine the reasonableness of the requested fee award, negotiated fee awards in class action settlements are strongly encouraged.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."); *accord Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.").

In this case, where the Settlement resulted in the creation of a $3,000,000 monetary

Settlement Fund for the benefit of the Classes, attorneys' fees are calculated based on a

"reasonable percentage of the fund established for the benefit of the class."[4] *Faught v. Am.*

*Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) (citing *Camden I*, 946 F.2d at 774); *In*

*re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1358 ("In the Eleventh Circuit, class

counsel is awarded a percentage of the fund generated through a class action settlement.").

While there is no mandate that a particular percentage of the common fund be awarded as

attorneys' fees, the Eleventh Circuit has found "that the majority of common fund fee awards fall

between 20% to 30% of the fund . . . [and] directed district courts to view this range as a

'benchmark' which may be adjusted in accordance with the individual circumstances of each

case, using the factors set forth in *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th

Cir. 1974).[5] *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999)

(internal quotations and citation omitted). The twelve "*Johnson* factors" are (1) the time and

labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform

the legal service properly; (4) the preclusion of other employment by the attorney; (5) the

customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount

---

[4]     The calculation of attorneys' fees is based on a percentage of the *entire* $3 million
Settlement Fund—not the amount claimed against it. *See Boeing Co.*, 444 U.S. at 478 ("A
litigant or lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from
the fund as a whole."); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297
(11th Cir. 1999) ("[C]lass counsel are entitled to a reasonable fee based on the funds potentially
available to be claimed, regardless of the amount actually claimed"); Alba Conte & Herbert
Newberg, *Newberg on Class Actions* § 11:18 (4th ed. 2004) ("It is now settled that class counsel
may seek a fee award based on the total potential benefit to the class, rather than being limited by
the total amount of claims actually exercised by class members.").
[5]     The benchmark, however, is just that, and fee awards often exceed this guidepost. *See,
e.g., Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012)
(finding that 33% is the market rate in class actions); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F.
Supp. 2d 1334, 1341 (S.D. Fla. 2007) ("The 30% fee requested in this case is well in line with
the bulk of the fee awards in class action litigation").

involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772.

Here, Class Counsel requests the Court approve the agreed-upon $750,000 in attorneys' fees, which represents 25% of the $3,000,000 Settlement Fund made available to the Class and, as discussed below, is eminently reasonable in light of the *Johnson* factors.

### A. Class Counsel Exerted a Great Deal of Time and Effort in This Case and Were Consequently Precluded from Accepting Other Employment.

The first, fourth, and seventh *Johnson* factors—the time and labor, preclusion of other employment, and time limitations imposed, respectively—are interrelated inquires and each support the reasonableness of Class Counsel's fee request. Class Counsel engaged in over three years of, at times, contentious and hard-fought litigation before reaching a Settlement. The tasks Class Counsel was required to perform in order to achieve the beneficial results of the Settlement included:

- An extensive pre-suit investigation of Plaintiffs' claims and the claims of the Premium Overpayment Settlement Class and Identity Theft Settlement Class;

- The briefing of oppositions to two separate motions to dismiss (dkts. 24, 35);

- A successful appeal to the Eleventh Circuit that included issues of first impression;

- The briefing of an opposition to Defendant's motion to strike class allegations filed after remand (dkt. 57);

- The commencement of class- and merits-focused discovery, including the formal and informal production of information and documents;

- The preparation for and attending of two in-person mediations with Mr. Max; and

- Extensive arm's-length settlement negotiations over the course of 10 months that culminated in a comprehensive settlement agreement offering exceptional and novel relief.

These efforts required Class Counsel to spend over 1,800 hours representing Plaintiffs and the Classes without compensation.[6]  (Scharg Decl. ¶¶ 10, 15.)  In addition to the hours already expended, Class Counsel must still prepare briefing for the final fairness hearing, communicate with Class Members about the Settlement, and otherwise supervise the administration of the Settlement.  (*Id*. ¶ 16.)

During the time this case has been pending, Class Counsel had to forgo accepting other cases and was precluded from devoting time and resources to litigating other matters.  (*Id*. ¶ 10.); *see also Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) ("The expenditure of 1,000 billable hours—and often in significant blocks of time—necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award."); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium").  Accordingly, the amount of time and labor devoted to this case supports the reasonableness of Class Counsel's fee request.

**B.    The Case Involved Difficult Issues of First Impression and the Risk of Nonpayment and Not Prevailing on the Claims Was High.**

The second, sixth, and tenth *Johnson* factors—the novelty and difficulty of the questions, whether the fee is contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested fee award.  "A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent

---

[6]    Although these *Johnson* factors involve a general consideration of attorney time and tasks performed, as this Court has stated, "[t]he Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions . . . [and] [t]he lodestar approach should not be imposed through the back door via a 'cross-check.'"  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.

outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and

nonpayment in a class action are extremely high." *Pinto*, 513 F. Supp. 2d at 1339.  "A

contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re*

*Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 (citing *In re Sunbeam Sec. Litig.*,

176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001)).  Ultimately, "attorneys' risk is perhaps the

foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*

*of Am.*, No. 06-cv-61677, 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008) (citing *Pinto*, 513 F.

Supp. 2d at 1339).

    As evidenced by the Court twice dismissing this action (dkts. 30, 39), this case has been

fraught with risk from the outset.  First, Class Counsel's representation of Plaintiffs and the

Classes has been on a purely contingent basis, which necessarily assumed the significant risk that

they would not be compensated for the 1,800 hours in time and tens of thousands of dollars in

out-of-pocket expenses that they put into the case.  (Scharg Decl. ¶¶ 10, 11, 14, 15.)  This was

especially true given that until the ruling by the Eleventh Circuit, courts routinely dismissed

claims seeking to recover damages resulting from the exposure of private personal or medical

information finding no redressable injury.  *See, e.g.*, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d

629 (7th Cir. 2007) (dismissing claims in data breach case on Rule 12(c) motion); *McLoughlin v.*

*People's United Bank*, 08-cv-00944, 2009 WL 2843269 (D. Conn. Aug. 31, 2009) (dismissing

claims in data breach case on Rule 12(b)(6) motion); *In re Hannaford Bros. Customer Data Sec.*

*Breach Litig.*, 613 F. Supp. 2d 108 (D. Me. 2009) (same); *Ponder v. Pfizer*, 522 F. Supp. 2d 793

(M.D. La. 2007) (same); *Key v. DSW Inc.*, 454 F. Supp. 2d 684 (S.D. Ohio 2006) (same);

*Hendricks v. DSW Shoe Warehouse Inc.*, 444 F. Supp. 2d 775 (W.D. Mich. 2006) (same).

    Although Class Counsel were able to achieve an excellent result for the Classes *after* the

Eleventh Circuit ultimately found that Plaintiffs alleged a cognizable injury and approved Plaintiffs' novel unjust enrichment theory, this outcome was far from certain when Class Counsel agreed to the representation, and thus, this factor weighs in favor of approving the requested fee.[7]  *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("Undesirability and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight") (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

### C.    Class Counsel Achieved an Excellent Result for the Classes.

The eighth and most significant *Johnson* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by Class Counsel.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1202 (S.D. Fla. 2006).

Here, the creation of a $3,000,000 Settlement Fund used to make substantial monetary payments available to the Classes weighs strongly in favor of approving the requested fee.  First, the 460,000 members of the Premium Overpayment Settlement Class are entitled to recover $10 per year (up to three years or $30) in reimbursements for data security that they paid for but allegedly did not receive from Defendant.  (*See* Agreement § 2.1(a).)  This recovery is significant when compared to the testimony of Plaintiffs' expert, who opined that AvMed should have spent

---

[7]    In fact, the Eleventh Circuit's recognition of the value of the protection of sensitive personal data has paralleled growing public concern regarding the sensitivity of personal information and the necessity for providing adequate protections to ensure it is not exposed for illicit purposes, targeted advertising, or government surveillance.  *See* The Economist Intelligence Unit, *Privacy Uncovered: Can Private Life Exist in the Digital Age?*, The Economist (2013), available at *www.beazley.com/documents/tmb/privacy_uncovered.pdf.*

between $1,000,000 to $3,400,000 to implement the data security protections encompassed in the premiums it was charging members of the class.  (*See* Dkt. 81.)  In addition, members of the Identity Theft Settlement Class may submit claims for the *full* amount of any losses they incurred as a result of this data breach.  (*Id.* § 2.1(b).)

By making cash payments available to members of both Classes, the instant Settlement exceeds the benefits conferred by other data breach settlements, typically offering free credit monitoring, that have received final approval from federal district courts throughout the country. *See, e.g., Johansson-Dohrmann v. Cbr Sys., Inc.,* No. 12-cv-1115, 2013 WL 3864341 (S.D. Cal. July 24, 2013) (establishing a $2.5 million fund to provide approximately 300,000 class members with two years of credit monitoring and identity theft reimbursement); *Beringer v. Certegy Check Services, Inc.,* No. 07-cv-01657 (Dkt. 59) (M.D. Fla. Sept. 3, 2008) (establishing a $5 million fund to provide approximately 37 million class members with up to two years of credit monitoring and identity theft reimbursement); *In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig.*, No. 09-MDL-2046, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) (establishing a $2.4 million fund from which to provide over 100 million class members with identity theft reimbursement); *Rowe v. Unicare Life and Health Ins. Co.,* No. 09-cv-02286 (Dkt. 46) (N.D. Ill. Sept. 14, 2011) (establishing a $3 million fund to provide approximately 220,000 class members with one year of credit monitoring, identity theft reimbursement, and *cy pres*).

While this factor typically focuses on the monetary relief obtained, the prospective measures AvMed has agreed to implement to ensure that Class Members' data remains secure moving forward should not be discounted.  *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (noting the common fund doctrine "must logically extend, not only to litigation that confers a monetary benefit on others, but also litigation which corrects or prevents an abuse which would be

prejudicial to the rights and interests of those others." (citation omitted).  Here, the benefit obtained for the Classes through these prospective measures (which are estimated by Plaintiffs' expert to cost approximately $1,000,000 to $3,400,000 to implement), adds to the exceptional benefits afforded by the Settlement and further favors approval of the agreed-upon fee.

**D.    The Requested Fee is Consistent With Those Awarded in Other Similarly Complex Class Settlements in This Circuit.**

The fifth and twelfth *Johnson* factors, the customary fee and awards in similar cases, respectively, also support a finding that the agreed-upon fee request—which amounts to 25% of the $3 million Settlement Fund—is reasonable.  Indeed, a fee request of 25% falls directly in the middle of the 20%-30% benchmark range in this Circuit.  *Waters*, 190 F.3d at 1294. *See, e.g., In re Checking Account Overdraft Litig*., 830 F. Supp. 2d at 1365 (finding that a 30% fee is customary in class action cases); *Wolff*, 2012 WL 5290155 at *6 (finding that 33% is the market rate in class actions); *Pinto*, 513 F. Supp. 2d at 1341 ("The 30% fee requested in this case is well in line with the bulk of the fee awards in class action litigation"); *Allapattah*, 454 F. Supp. 2d at 1204 (S.D. Fla. 2006) (awarding 31.3% of fund).

Accordingly, this factor further favors Class Counsel's request for 25% of the common fund.

**E.    A High Level of Skill Was Required to Perform the Legal Services Properly.**

The remaining *Johnson* factors—the skill required to perform the legal service properly and the experience, reputation, and ability of the attorneys—confirm that the requested fee is reasonable.  As discussed above, Class Counsel were able to successfully resolve this case through a settlement that confers substantial monetary and prospective relief to the Classes despite litigating against a well-financed Defendant employing top-tier counsel from a national law firm.  (Scharg Decl. ¶ 12); *see also In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d at 1334  ("In

14

assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced").

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Indeed, Class Counsel regularly engages in major complex litigation involving technology issues and has frequently been appointed lead class counsel by courts throughout the country.  (*See* Firm Resume of Edelson PC, attached to the Scharg Declaration as Exhibit 2-A); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379 (Dkt. 59) (N.D. Cal. 2011) (appointed Interim Class Counsel in an adversarial leadership dispute, during which the court noted that the Edelson firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *In re Facebook Privacy Litig.,* No. 10-cv-02389 (Dkt. 69) (N.D. Cal. 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field"); *Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262, at *1 (N.D. Ill. Apr. 2, 2013) (achieving adversarial certification in the largest-ever privacy class action).

As they did in each of the above-referenced cases, Class Counsel used their extensive experience to effectively investigate, prosecute, and settle the claims at issue here, and the results achieved are in line with or exceed those obtained in similar cases.[8]

## IV.     THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFFS SHOULD BE APPROVED

Finally, the Court must consider whether to approve the requested $5,000 Incentive

---

[8]     Finally, the eleventh *Johnson* factor—the nature and length of the professional relationship with the client—also weighs in favor of the requested fees as Class Counsel had no prior relationship with the Plaintiffs.  *See Allapattah*, 454 F. Supp. 2d at 1216.

Award to each of the two named-Plaintiffs (Curry and Moore) in recognition of their roles as Class Representatives.  Courts consistently find it appropriate to provide a named class representative with an incentive award for the benefits they have conferred upon the rest of the class.  *See Allapattah*, 454 F. Supp. 2d at 1218-19; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two incentive awards of $55,000 and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding incentive awards of $20,000 to each of two plaintiffs).  Courts within the Eleventh Circuit frequently approve incentive awards of $5,000 or more.  *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1358 (collecting cases and approving incentive awards of $5,000 per class representative); *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010) (approving an incentive award of $5,000 for a class representative, in addition to a new motorcycle); *Pinto*, 513 F. Supp. 2d at 1344 (approving incentive awards of $7,500 per class representative).  Incentive awards are intended to "compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Allapattah*, 454 F. Supp. 2d at 1218-19 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)).

Here, the agreed-upon incentive award of $5,000 to each Class Representative is entirely reasonable because Ms. Curry's and Mr. Moore's involvement in the litigation was essential to the ultimate success of the settlement. Further, the requested incentive awards are level with awards approved in similar class action settlements.  *See, e.g.*, *Johansson-Dohrmann*, No. 12-CV-1115, 2013 WL 3864341 at *12 (approving incentive award of $5,000 to class representative in a data breach action).

Throughout the extensive litigation, including the appeal before the Eleventh Circuit,

there was never any pre-arrangement or discussion of an award or the potential for an award in exchange for Ms. Curry's or Mr. Moore's involvement in this lawsuit.  (Scharg Decl. ¶ 17.) Nevertheless, the Class Representatives dedicated their time and effort to pursuing the claims on behalf of the Classes, exhibiting a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action.  (*Id*. ¶ 18.)  From start to finish, each Class Representative aided in the investigation of the claims, consulting with Class Counsel, participating in formal and informal discovery, and contributing to the mediation efforts. Significantly, Ms. Curry and Mr. Moore provided Class Counsel with critical information about their personal experiences in the data breach.  (*Id*.)  Furthermore, the Class Representatives readily agreed to the Settlement without demanding any incentive award for their efforts.  (*Id*. ¶ 17.)  But for the Class Representatives' tireless participation in this litigation, the substantial benefit to the class achieved through the settlement would not likely have resulted.  Accordingly, Class Counsel requests that the Court approve the requested incentive award of $5,000 each for Ms. Curry and Mr. Moore.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court find that the requested attorneys' fees, expenses and incentive awards are reasonable, enter the Proposed Order that will be separately submitted with the Final Approval briefing granting the requested attorneys' fees and incentive award, and award such further relief the Court deems reasonable and just.

Respectfully submitted,

Dated: January 23, 2014                 JUANA CURRY and WILLIAM MOORE,
                                        individually and on behalf of a class of similarly
                                        situated individuals

                                        By:  /s/ Ari J. Scharg
                                        _____

17

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edeslon.com
Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
Benjamin S. Thomassen (Admitted *Pro Hac Vice*)
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378


By:  /s/ Edmund A. Normand

Edmund A. Normand (No. 865590)_
Diego M. Madrigal, III (No. 0037643)
WOOTEN, KIMBROUGH, & NORMAND, P.A.
236 S. Lucerne Circle
Orlando, Florida 32801
Tel: 407.843.7060
Fax: 407.843.5836

*Counsel for Plaintiffs and the Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Edmund A. Normand, an attorney, hereby certify that on January 23, 2014, I served the above and forgoing ***Plaintiffs' Motion For Reasonable Attorneys' Fees, Expenses, and Incentive Awards***, on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system.

/s/ Edmund A. Normand