# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 10-cv-24513-JLK

| | |
|---|---|
| JUANA CURRY and WILLIAM MOORE, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>    v.<br><br>AVMED, INC., d/b/a/ AvMed, a Florida Corporation,<br><br>    Defendant. | Case No. 10-cv-24513-JLK<br><br>Hon. James Lawrence King |

**DECLARATION OF ARI J. SCHARG IN SUPPORT OF
PLAINTIFFS' MOTION & MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1. I am over the age of 18 and am fully competent to make this declaration. This declaration is based upon my personal knowledge, except where expressly noted elsewise. If called upon to testify as to the matters attested to herein, I could and would competently do so.

2. I am an attorney admitted to practice in the State of Illinois, the United States District Courts for the Northern District of Illinois, the Eastern District of Michigan, the District of Colorado, and the Seventh and Ninth Circuit Courts of Appeals. I am admitted *pro hac vice* in this matter. I am entering this declaration in support of Plaintiffs' Motion & Memorandum in Support of Final Approval of Class Action Settlement.

3. I am a Partner at the law firm of Edelson PC, and have been retained to represent the named Plaintiffs in this matter, Juana Curry and William Moore.

1

4. Beginning in December of 2012, the Parties began discussing the potential for settling this case, and subsequently agreed to attend a private mediation with the assistance of Rodney A. Max of the Upchurch Watson White & Max Mediation Group.

5. On January 18, 2013, the Parties met for full day mediation with Mr. Max in Miami, Florida, during which they engaged in productive discussions aimed towards reaching a potential settlement. Although the Parties were unable to reach a settlement in principle at this first mediation session, they agreed to continue speaking.

6. In the six months following the January 18, 2013, mediation, the Parties, with the assistance of Mr. Max, continued with their arm's-length negotiations, eventually reaching a point where Mr. Max suggested another in-person mediation to address certain remaining issues.

7. On April 11, 2013, counsel for the Parties reconvened for a second formal mediation with Mr. Max and were able to make further progress towards an actual settlement, and both sides agreed to continue working through the remaining issues to reach a complete resolution.

8. On May 19, 2013, following several additional rounds of arm's-length negotiations, the Parties finally reached an agreement as to the principal terms of a class settlement and were able to memorialize these terms in a Memorandum of Understanding.

9. Throughout this negotiation process, Class Counsel insisted that negotiations about attorneys' fees only occur after relief to the Classes was agreed upon, and negotiations on attorneys' fees did not begin until after an agreement in principal as to Class relief was reached. Mr. Max assisted with these attorneys' fees negotiations as well.

10. Over the course of the next four months, the Parties exchanged several drafts of a settlement agreement and related documents until they were finalized.

11. The Parties reached the instant Settlement only after three years of hard-fought litigation, which included the exchange of formal and informal discovery, an appeal to the Eleventh Circuit, two separate rounds of in-person mediation facilitated by Mr. Max, and multiple rounds of arm's-length negotiations over ten months.

12. The Parties agreed to the terms of the Settlement through experienced counsel, who ensured that they had ample information at their disposal both prior to the mediation sessions and during subsequent negotiations to evaluate the terms of any proposed agreement so as to reach a fair and reasonable compromise.

13. Class Counsel ensured that they were provided with sufficient information about the data breach at issue, the resulting governmental investigation, the remedial efforts taken by Defendant following the breach, the sizes of the Settlement Classes, and the range of each Class's potential damages before completing the mediation process and agreeing to this Settlement.

14. Class Counsel recognizes that the expense, duration, and complexity of protracted litigation would be substantial and require further briefing on numerous substantive issues, evidentiary hearings, and further discovery, including significant expert discovery to establish that Defendant failed to protect its customers' sensitive information using industry standard and HIPAA-required safeguards, that the December 2009 data breach caused the identity thefts, and the measure of damages suffered by the Classes.

15. Summary judgment briefing and/or trial in this action would likely require the retention of competing experts, which would come at no small cost.  And further, if either side were to have prevailed on summary judgment or if Plaintiffs obtained class certification, the losing side would likely appeal.

16. Notice of the Settlement was sent to the U.S. Attorney General, and Attorneys General of all 50 states, the District of Columbia, and Puerto Rico, and none have voiced any opposition to the terms of the Agreement.

17. Class Counsel's office has fielded calls from over 750 class members with inquires about the Settlement, most of which commented favorably about the terms of the Settlement. One class member expressed that, "[o]n behalf of the people, I want to thank you for your efforts and energy in representing and protecting us in this important matter."

18. Only one class member objected to this Settlement and sixty-two sought to be excluded. The objection is attached hereto as Exhibit 2-A.

19. Although members of the Settlement Classes have until March 31, 2014 to file claims, Class Counsel believe there will be sufficient funds available to pay the full amount to each Premium Overpayment and Identity Theft Settlement Class member that submits a valid claim.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 14, 2014 at Chicago, Illinois

                                                                  /s/    Ari J. Scharg

# Exhibit 2-A

From  Jim and Virginia Collins
To    whom it may concern
Subj  Settlement in Curry vs
      AvMed (10-cv-24513).

We would like to object to the settlement in this case. After some review it seems to be another case of greenmail by lawyers looking for deep pockets. Of course most of the recipients will gladly accept this "found money" and AvMed is willing to pay it to reduce their court costs and bad publicity. But that does not make it right.

The few (if any) plaintiffs that actually had ID theft due to this loss should

recompensed for their costs + time if it truly came from this data breach.

Otherwise we happen to believe that the settlement should be voided.

Thank you for listening,

*Jim Collins*

*Virginia Collins*

P.S. We were AvMed members for the time in question.
Claim # 02109299
          01878977
(as well as our two children).

Jim Collins
1668 Misty Lake Dr
Fleming Island, FL
                32003
(904) 535-4793

