## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**JUANA CURRY, and WILLIAM MOORE,**
**individually and on behalf of a class of**
**similarly situated individuals,**

> **Plaintiffs,**

**v.**                                                    CASE NO.:  1:10-CV-24513-JLK

**AVMED, INC., d/b/a AVMED, a Florida**
**Corporation,**

> **Defendant.**

_____/

## DEFENDANT AVMED, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, FL  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
John J. Delionado
Florida Bar No. 499900
Paulo R. Lima
Florida Bar No. 0064364
Email:  jdelionado@hunton.com
Email:  plima@hunton.com

*Counsel for Defendant AvMed, Inc.*

Dated: February 14, 2014

# TABLE OF CONTENTS

Page

Introduction ....................................................................................................................1

Factual Background ........................................................................................................2

The Settlement Agreement .............................................................................................5

Argument .......................................................................................................................7

A.    Legal Standard......................................................................................................7

B.    The Settlement Satisfies Rule 23 as it is Fair, Reasonable, and Adequate and is Not
      the Product of Collusion Between the Parties..................................................8

      1.    The Settlement is the Result of Arm's-Length Negotiations Overseen by an
            Experienced, Impartial Mediator. .........................................................8

      2.    The Plaintiffs' Likelihood of Success at Trial......................................9

      3.    Range of Possible Recovery and the Point on or Below the Range of
            Recovery at Which a Settlement is Fair ..............................................10

      4.    Complexity, Expense, and Duration of Litigation..............................12

      5.    Substance and Amount of Opposition to the Settlement ....................13

      6.    The Stage of the Proceedings at Which Settlement Was Achieved ....14

C.    The Individual Notice Provided in This Action Satisfies Rule 23(c)(2). ........15

Conclusion ...................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ault v. Walt Disney World Co.*,
   692 F.3d 1212 (11th Cir. 2012)..................................................................................7

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ..........................................................................passim

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ................................................................................14

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................................15

*Figueroa v. Sharper Image Corp.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007).............................................................passim

*Fresco v. Auto Data Direct, Inc.*,
   2007 WL 2330895 (S.D. Fla. May 14, 2007) ..........................................................8

*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D. La. 1993)..............................................................................12

*In re Smith*,
   962 F.3d 1027 (11th Cir. 1991).................................................................................7

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ..................................................................................7

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001)...............................................................................8

*LiPuma v. American Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005)........................................................ 10, 12, 13, 14

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012)............................................................................3, 4

OTHER AUTHORITIES

Fed R. Civ. P. 23..............................................................................................passim

Defendant, AvMed, Inc. ("AvMed") respectfully submits this Memorandum of Law in Support of Final Approval of Class Action Settlement. This memorandum is submitted in further support of the Plaintiffs' Motion for Final Approval of Class Action Settlement, which also is being submitted to the Court on this date.

## INTRODUCTION

The instant class action has been the subject of extensive motion practice, including three motions to dismiss, and an appeal to the Eleventh Circuit, all of which has given the parties and this Court a firm grasp of the legal and factual issues to be resolved in the event that this case proceeded to trial on its merits. The parties have participated in multiple confidential mediation sessions facilitated by an experienced mediator and also engaged one another through their counsel during months of direct arm's-length negotiations. The product of these efforts is a proposed settlement which, if approved, will finally resolve the claims asserted against AvMed, while providing a significant benefit to class members.

The proposed Settlement currently before the Court for final approval is fair, reasonable, and adequate and is not the product of collusion between the parties. Members of the proposed Identity Theft Subclass have the opportunity to be made whole, notwithstanding AvMed's substantial legal and factual defenses to their claims, by submitting a form, along with supporting documentation of any unreimbursed loss. Similarly, members of the proposed Premium Overpayment Settlement Class have the opportunity to recover $10 for every year they paid premiums to AvMed prior to December 2009 (up to a $30 cap) by simply submitting a form to the Settlement Administrator. Thus, the Settlement provides immediate relief to all proposed Settlement Class Members commensurate with their alleged injuries while imposing a minimal burden. Moreover, the settlement classes meet the requirements for class certification under

1

Rules 23(a) and 23(b)(3).  Accordingly, for the reasons explained more fully below, the Court should grant final approval of the proposed Settlement.

## FACTUAL BACKGROUND

Plaintiffs and class representatives Juana Curry and William Moore assert claims on behalf of two classes of similarly-situated individuals affected by the theft of laptop computers from the corporate headquarters of AvMed, a Florida-based, non-profit corporation that offers healthcare plans to businesses and individuals throughout Florida and nationwide.  Plaintiffs allege that in December 2009, laptop computers containing the unencrypted private information of approximately 1.2 million AvMed members were stolen from an AvMed conference room.  Plaintiffs allege that, as a result of AvMed's failure to properly secure their information, they suffered two distinct categories of harm:  (i) they had their identities stolen, and (ii) they overpaid for insurance coverage, the premiums for which, they allege, included the cost associated with protecting their Sensitive Personal Information.

This action was commenced in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, on November 16, 2010, by five named plaintiffs — Jean Resnick, Miguel Vasquez, Christopher Atkinson, Kirsten Atkinson, and Rochel Albertson — who asserted claims on behalf of a putative class of AvMed members whose Sensitive Personal Information was contained on the stolen laptop computers.  AvMed timely removed this case to the U.S. District Court for the Southern District of Florida (D.E. # 1), and simultaneously filed a motion to dismiss on the ground that none of the five named Plaintiffs had alleged injury because they had not alleged that their Sensitive Personal Information was misused in any way as a result of the laptop thefts (D.E. # 3).

The Plaintiffs responded by amending their complaint on January 14, 2011, adding a sixth named Plaintiff, Juana Curry, who alleged that she suffered identity theft as a result of the

theft of the laptops.  (D.E. #15, First Amended Complaint.)  AvMed once again moved to dismiss, arguing that Plaintiffs failed adequately to allege injury and that they failed to state claims under Florida law based on various substantive pleading defects in each of the individual causes of action.  (D.E. # 23.)  The District Court granted AvMed's motion on April 5, 2011, dismissing the FAC without prejudice.  (D.E. # 30.)

Plaintiffs' Second Amended Complaint ("SAC"), filed April 25, 2011, dropped all five of the original named Plaintiffs who had not alleged any injury, kept Curry as a Plaintiff, and added a new Plaintiff, William Moore.  Like Curry, Moore also alleged that he suffered identity theft resulting from the theft of the laptops.  (D.E. #31.)  In the SAC, Curry and Moore sought to represent a class and sub-class of current and former AvMed members and their dependents whose Sensitive Personal Information was contained on the stolen laptops, asserting claims for: (i) negligence; (ii) breach of contract; (iii) breach of implied contract; (iv) unjust enrichment; (v) negligence *per se*; (vi) breach of fiduciary duty; and (vii) breach of the implied covenant of good faith and fair dealing.  AvMed again moved to dismiss, arguing that both Plaintiffs failed to allege injury because neither Curry nor Moore had alleged that they incurred an unreimbursed loss and also failed to state claims under Florida law based on various substantive pleading defects in each of the individual causes of action.  (D.E. #33.)  The District Court dismissed the SAC with prejudice on July 12, 2011, concluding "[a]mong its other deficiencies, Plaintiffs' Second Amended Complaint again fails to allege any cognizable injury."  (Order Dismissing SAC, D.E. #39.)

Curry and Moore appealed the dismissal to the Eleventh Circuit, which affirmed in part and reversed in part.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012). Acknowledging that this case presented an issue of first impression in this circuit, the Eleventh

3

Circuit held, in a 2-1 decision, that the Plaintiffs had standing to sue and had pled enough to plausibly show that their identity theft was proximately caused by the theft of the laptops. The Eleventh Circuit's holding on this issue was based largely on "extraordinary precautions" that Curry and Moore alleged they had taken to safeguard their Sensitive Personal Information and protect themselves from identity theft. *Id.* at 1327.

Notwithstanding its belief that it had substantial defenses to Plaintiffs' individual claims and their ability to maintain this action as a class action, AvMed recognized that litigation could be long, costly, and distracting, and therefore agreed to mediate in the hope of reaching a reasonable settlement. On January 18, 2013, the parties participated in a full-day, in-person mediation session with Rodney A. Max of Upchurch Watson White & Max Mediation Group. While they were unable to reach an agreement, they agreed to continue the dialogue and had several more mediation sessions facilitated by Mr. Max over the next several months, including another in-person session on April 11, 2013. On May 19, 2013, the parties agreed to the principle terms of a settlement, which were documented in a Memorandum of Understanding. The parties continued arm's-length discussions for several more months before signing a comprehensive Settlement Agreement in October 2013.

The Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Settlement (D.E. # 77) on October 21, 2013. The Court granted that motion on October 25, 2013 and entered an Order Granting Preliminary Approval of Class Action Settlement Agreement, Certifying Settlement Classes, Appointing Class Representatives, Appointing Class Counsel, Approving Notice Plan, and Setting Final Approval Hearing. (D.E. # 82.)

## THE SETTLEMENT AGREEMENT[1]

The Court has preliminarily approved two Settlement Classes defined follows:

**The Premium Overpayment Settlement Class:**  All current and former AvMed customers who, prior to December 2009, paid AvMed for insurance, and whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident.

**The Identity Theft Settlement Class:**  All current and former AvMed customers whose Sensitive Personal Information was contained on the laptops stolen during the December 2009 Incident, and who suffered Identity Theft and incurred unreimbursed losses as a result.

Excluded from the Settlement Classes are: (i) AvMed and any of its current or former employees, officers, or agents; (ii) the Settlement Administrator and its parents, subsidiaries, successors, predecessors, and related entities; and (iii) any trial judge(s) presiding over this Action, and their immediate family members.

Pursuant to the Settlement Agreement, AvMed has agreed to create a Settlement Fund in the amount of $3 million, which will be used to cover (to the extent the Settlement receives final approval) the following costs:  (i) Approved Premium Overpayment Claims, (ii) Approved Identity Theft Claims, (iii) Settlement Administration Expenses, (iv) Class Counsel's attorneys' fees and expenses, and (v) Curry's and Moore's Incentive Awards.[2]  If, after deducting the cost of the latter three categories, the amount remaining in the Settlement Fund is less than the amount of Approved Identity Theft Claims and Approved Premium Overpayment Claims, then the amount of those claims will be reduced *pro rata* so that the total payment for all five items does not exceed $3 million.

---

[1] The Settlement Agreement was submitted as Exhibit 1 to the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. (D.E. # 77-1.)

[2] All capitalized terms have the same meaning assigned to them in the Settlement Agreement.

The Settlement gives members of the Identity Theft Settlement Class the opportunity to be made whole for their losses without the need to marshal all of the proof that would certainly be necessary in litigation.  To obtain compensation, Identity Theft Settlement Class Members need to fill out a one-page claim form, provide documentation sufficient to meet the standard set forth in the Settlement Agreement that demonstrates they suffered identity theft between December 2009 and the claims deadline, and provide proof that they were not reimbursed for such losses.

Members of the Premium Overpayment Settlement Class are given the opportunity to collect $10 for every year that they paid premiums to AvMed prior to the December 2009 incident (up to $30) or a lesser *pro rata* share.  The Premium Overpayment funds serve as reimbursement for the portion of their premiums that Plaintiffs contend AvMed should have spent, but did not, to provide additional protections for their Sensitive Personal Information. Qualifying Premium Overpayment Settlement Class Members need to complete a one-page form that attests to the number of years or partial years that they paid premiums to AvMed prior to December 2009.  The claim forms for both of the proposed Settlement Classes were submitted with the Settlement Agreement (D.E. # 77-1) and were preliminarily approved by the Court.

In return for this relief, the Settlement Class Members have given a complete release of any actual or potential claims against AvMed relating to AvMed's maintenance and protection of the Settlement Classes' Sensitive Personal Information, including the theft of the laptops in December 2009.[3]  The Settlement Agreement also provided for an extensive notice plan (which was approved by the Court), a provision that allows Plaintiffs' Counsel to request attorneys' fees

---

[3] The full scope of the Released Claims, Released Parties, and Releasing Parties, are described in Paragraphs 1.35-1.37, 3.1 and 3.2 of the Settlement Agreement.  (D.E. # 77-1.)  The individual email and postcard notices that were sent to the Proposed Settlement Class members provided the website where they could view a copy of the Settlement Agreement.

from this Court (discussed in Plaintiffs' separate motion for attorneys' fees), and various standard settlement provisions.

<strong><u>ARGUMENT</u></strong>

**A.    Legal Standard**

Under Rule 23(e), court approval is required to settle "[t]he claims, issues or defenses of a certified class." Fed. R. Civ. P. 23(e). In order to approve a class settlement, a court must "conduct a hearing and find that it is fair, reasonable, and adequate." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012) (citing Fed. R. Civ. P. 23(e)(2)). The court also must determine that the settlement "is not the product of collusion between the parties." *Ault*, 692 F.3d at 1217 (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). In evaluating whether a proposed settlement is fair, reasonable and adequate, a court considers six factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986.

In assessing the *Bennett* factors, a judge "should be hesitant to substitute [its] own judgment for that of counsel." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (citing *In re Smith*, 962 F.3d 1027, 1028 (11th Cir. 1991)). Finally, the court should be guided by the fact that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).

**B.      The Settlement Satisfies Rule 23 as it is Fair, Reasonable, and Adequate and is Not the Product of Collusion Between the Parties.**

Applying the factors set out above, the Court should approve the settlement because it is fair, reasonable, and adequate and is not the product of collusion.

**1.      The Settlement is the Result of Arm's-Length Negotiations Overseen by an Experienced, Impartial Mediator.**

A court evaluating the collusion factor "examin[es] the negotiating process to determine whether the compromise was the result of arms-length bargaining between the parties." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001). The court in *Ingram* found that the settlement was not the product of collusion and noted "[t]he fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion." *Id.* ("Parties colluding in a settlement would hardly need the services of a neutral third party to broker their deal."). The same is true here. As noted above, and in the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and supporting materials,[4] the proposed settlement in this action was brokered by Mr. Max, who has been described by another court in this district as "an eminently qualified mediator." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *5 (S.D. Fla. May 14, 2007). Even after the mediation facilitated by Mr. Max, the parties engaged in several months of additional arm's-length negotiations through their respective counsel. The lack of collusion is further demonstrated by the hard-fought nature of this case, which entailed three motions to dismiss and an appeal to the Eleventh Circuit before the parties began settlement discussions. In light of the well-documented adversarial history of this case, the Court should find that the proposed settlement is not the result of collusion between the parties.

---

[4] *See also* Declaration of Ari J. Scharg In Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. ("Scharg Decl.", D.E. # 77-2.)

## 2.     The Plaintiffs' Likelihood of Success at Trial

In addition to being the first *Bennett* factor, the likelihood of success at trial is "by far the most important factor in evaluating a class action settlement." *Figueroa*, 517 F. Supp. 2d at 1323. When a court evaluates this factor, "[t]he likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Id.*

This *Bennett* factor strongly favors approval in this case in light of AvMed's strong legal and factual defenses to the Plaintiffs' claims, including the substantial difficulty that each Plaintiff would face in establishing a causal connection between the theft of AvMed's laptops in December 2009 and any identity theft they suffered. As discussed above, the Eleventh Circuit concluded that Curry and Moore had pleaded enough to satisfy the causation element of their claims to get past a motion to dismiss. Of course, if this case proceeds to trial, the Plaintiffs will need to do more than just satisfy the plausibility standard to show that their identity theft was proximately caused by the theft of the laptops and will face significant evidentiary hurdles in that respect. Furthermore, AvMed would pursue vigorously the arguments that it raised in its Renewed Motion to Strike Class Allegations (D.E. # 52).

Despite these significant uncertainties, the proposed Settlement would allow members of the Identity Theft Settlement Class the potential to be ***fully compensated*** for their unreimbursed identity theft without having to put forth the type of evidence required in a civil trial. Instead, they need to complete and sign the one-page Identity Theft Claim Form and submit some tangible proof that they suffered identity theft during the claims period and that it has not been reimbursed. Similarly, the Premium Overpayment Settlement Class members would receive compensation without needing to establish that they paid their premiums based on an expectation or understanding that they would receive certain level of security for their Sensitive Personal Information. Rather, members the Premium Overpayment Settlement Class would receive

payment by simply submitting a signed claim form that attests to how long they paid premiums to AvMed during the relevant time period.

Thus, the Plaintiffs' questionable chances of success at trial, weighed against the "amount and form of relief contained in the settlement," *Figueroa*, 517 F. Supp. 2d at 1323, strongly favors final approval of the Settlement.

### 3. Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair

The second and third *Bennett* factors typically are analyzed together. *See Figueroa*, 517 F. Supp. 2d at 1326; *LiPuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005). In *LiPuma*, Judge Altonaga noted that "[t]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." 406 F. Supp. 2d at 1322.

Here, members of the proposed Identity Theft Settlement Class will receive ***full reimbursement*** provided that they submit sufficient information to meet the standard set forth in the Settlement Agreement on or before the Claims Deadline, which is 30 days after the entry of Final Judgment.

As for the Premium Overpayment Settlement Class members, the Plaintiffs noted in their Motion for Preliminary Approval that "[t]he true measure of this recovery comes from comparing the *actual*, per-member cost of providing the missing security measures – e.g., what AvMed would have paid to provide encryption and password protection to laptop computers containing Personal Sensitive Information, and to otherwise comply with HIPAA's security regulations – against what Class members stand to receive through the Settlement." (D.E. 77 at 16 (emphasis in original).) According to the expert declaration of C. Matthew Curtin, C.I.S.S.P. (Certified Information Security Systems Professional), "AvMed could have reasonably expended

between approximately $1,000,000 and $3,400,000 during the period between 2003 and 2010 to comply with HIPAA's encryption requirements." (D.E. # 81, Declaration of C. Matthew Curtin in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, at ¶ 8.) Thus, even at the high end of Mr. Curtin's estimate, the award on a per-member basis (taking into account that approximately 460,000 individuals whose names were on the stolen laptop computers were premium-paying AvMed members[5]) is at the high end of what each member of the proposed Premium Overpayment Settlement Class could hope to recover at trial.

In sum, based on the settlement claims administration experience to date, the parties are confident that all proposed Settlement Class Members will obtain the full compensation contemplated under the terms of the Settlement Agreement, without the need to reduce their recovery *pro rata*.[6] Even if that is not the case, however, "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Figueroa*, 517 F. Supp. 2d at 1326.

In addition to the monetary relief, AvMed has implemented the following prospective measures: (1) mandatory security awareness and training programs for all company employees; (2) mandatory training on appropriate laptop use and security for all company employees whose employment responsibilities include accessing information stored on company laptop computers; (3) upgrade all company laptop computers with additional security mechanisms, including GPS tracking technology; (4) new password protocols and full disk encryption technology on all company desktops and laptops so that electronic data stored on such devices would be encrypted

---

[5] The rest of the 1.2 million total affected AvMed members were dependents of the principal insured members, who paid the premiums.

[6] While the award to each proposed Settlement Class member could be diminished to a *pro rata* share to ensure that the total amount of the Settlement Fund does not exceed the $3 million cap, the parties believe that such a reduction is unlikely.

at rest; (5) physical security upgrades at company facilities and offices to further safeguard workstations from theft; and (6) review and revision of written policies and procedures to enhance information security.  (Settlement Agreement, D.E. # 77-1 at ¶ 2.2.)  These measures essentially cover the injunctive relief sought in the SAC and which the Plaintiffs would have been seeking if this case proceeded to trial on the merits.  (*See* SAC, D.E. # 31, at 37 (requesting in Prayer for Relief, *inter alia*, "(i) an order prohibiting AvMed from engaging in the wrongful and unlawful acts described herein, and (ii) requiring AvMed to protect all data collected through the course of its business in accordance with HIPAA and industry standards").)

In sum, the second and third *Bennett* factors strongly favor final approval given that (i) all of the Identity Theft Settlement Class Members who submit approved claims are likely to receive full reimbursement, just as they would have received if they prevailed at trial, (ii) all of the Premium Overpayment Class Members who submit approved claims are likely to receive substantially more than they would have received if they prevailed at trial, and (iii) AvMed has performed all of the enhancements that equate to what was sought by the Plaintiffs in the SAC.

### 4.    Complexity, Expense, and Duration of Litigation

Another court in this district explained its interpretation of the fourth *Bennett* factor as follows:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

*LiPuma*, 406 F. Supp. 2d at 1323 (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)).  The instant action has been pending for more than three years, including an appeal to the Eleventh Circuit, while the parties litigated a host of complex legal issues, including an issue of first impression in this Circuit.  While the parties have engaged in some discovery, there

would be extensive further discovery, including costly expert discovery, should the case proceed. In addition, there would be significant briefing at the summary judgment and class certification stages of the litigation.

The court's conclusion in *LiPuma* is equally applicable to this case: "With the uncertainties inherent in pursuing a trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a resolution by way of settlement are apparent." 406 F. Supp. 2d at 1324. Thus, the fourth *Bennett* factor easily weighs in favor of final approval.

### 5.    Substance and Amount of Opposition to the Settlement

Next, in considering approval of a class action, the fifth *Bennett* factor instructs district courts to evaluate the substance and amount of opposition to a settlement among affected parties. *See Figueroa*, 517 F. Supp. 2d at 1328 (noting that "[t]he reaction of the class is an important factor in gauging whether a settlement is fair, reasonable and adequate," and that "a low percentage of objections points to the reasonableness of a proposed settlement"). Here, not a single objection was filed prior to the deadline.[7] In fact, even the number of opt-outs is extremely low. The Settlement Administrator provided direct email notice and/or postcard notice via the U.S. Postal Service to each of the nearly 1.2 million current and former AvMed members whose names were on the stolen laptops and for whom AvMed had email or physical mailing addresses. The Settlement Administrator also established a web site (www.databreachsettlement.com). In all, only 43 requests for exclusion (opt-outs) were received

---

[7] AvMed's counsel received on January 27 a two-page handwritten letter from two AvMed members. While the authors used the word "objection," they requested that "[t]he few (if any) plaintiffs that actually had ID theft due to this loss should [be] recompensed for their costs and time <u>if</u> it truly came from this data breach." Because the Settlement Agreement already affords that form of relief to proposed Identity Theft Settlement Class Members, the so-called objection is moot.

prior to the January 30 opt-out deadline.  Based on the non-existent opposition and negligible rate of opt-outs, this factor weighs heavily in favor of final approval.

### 6.    The Stage of the Proceedings at Which Settlement Was Achieved

Courts apply this factor to "ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *LiPuma*, 406 F. Supp. 2d at 1324.  Here, the parties exchanged both formal and informal discovery prior to commencing settlement negotiations.  (*See* Scharg Decl., D.E. # 77-2, at ¶ 14.)  More importantly, the proposed Settlement was reached only after this Court had ruled on three separate motions to dismiss and the Eleventh Circuit issued an opinion deciding several legal issues.  The District and Circuit Court opinions caused the Plaintiffs to refine their claims and also highlighted some of the difficulties that Plaintiffs would face going forward, both on the merits and with respect to certification of litigation classes.  Indeed, those opinions played a significant role in the parties' evaluation of the merits of the claims and the costs each would face going forward, and convinced the parties to commence mediation and direct negotiations that resulted in the Settlement currently before this Court.

While the proposed Settlement in this case was reached before the bulk of formal discovery was conducted, courts have recognized that "vast formal discovery need not be taken" in order to satisfy the sixth *Bennett* factor.  *LiPuma*, 406 F. Supp. 2d at 1324 (noting "[w]e have often seen cases which were over discovered" in which formal discovery can result in "wasting the time of this Court, the parties, and their attorneys" and "serve as a vehicle to harass a party") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977)).  In *LiPuma*, the court emphasized the fact that class counsel had considerable experience in related litigation and held that "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case."  *Id.* at 1325.  The same is true in this case, where Class

Counsel, Edelson PC, has submitted proof of its "extensive experience in prosecuting consumer electronic privacy cases," including similar data breach cases.  (*See* D.E. # 77 at 14.)  Given the extensive procedural history, the parties exchange of discovery and proposed Class Counsel's experience, the Court should find that Class Counsel had ample information to weigh the benefits of settlement against continued litigation and the sixth *Bennett* factor favors final approval.

> **C.     The Individual Notice Provided in This Action Satisfies Rule 23(c)(2).**

For any class action certified under Rule 23(b)(3), proposed class members must receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Here, the list of potential Settlement Class Members is readily ascertainable from AvMed's corporate records, which were used to deliver individual notice via email and direct U.S. mail.  As such, notice has been provided in accordance with Rule 23(c)(2)(B).

<u>**CONCLUSION**</u>

For the reasons stated above, AvMed respectfully requests that the Court enter a Final Order approving the proposed Settlement.

## **Local Rule 7.1 Certification**

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), the undersigned counsel has conferred with counsel for Plaintiffs, Ari J. Scharg, who has advised that Plaintiffs do not oppose the relief requested in this motion.

Respectfully submitted this 14th day of February, 2014.

/s/ Paulo R. Lima
John J. Delionado
Florida Bar No. 0499900
Paulo R. Lima
Florida Bar No. 0064364
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:  jdelionado@hunton.com
Email:  plima@hunton.com

*Counsel for Defendant AvMed, Inc.*

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on February 14, 2014, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide email notification to counsel of record who are registered to use the CM/ECF filing system.


/s/ Paulo R. Lima
Paulo R. Lima

17